# LEARY, ADMINISTRATRIX OF LEARY, *v.* UNITED STATES.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 508.   Argued April 29, 30, 1912.—Decided May 13, 1912.

In a suit brought by the United States to charge the defendant with a trust in respect to funds obtained by another through fraud against the United States, *held* that the personal representative of a third party claiming an interest in the funds under an agreement indemnifying him as bail of the party fraudulently procuring such funds was, under the circumstances of this case, entitled to intervene.

A contract that certain specific assets in the hands of a trustee should be held as security for a specific contingent claim is necessarily express, and is none the less so if conveyed by acts importing it than if stated in words.

Where the intervenor has not legal title and is not claiming against an admitted prior equity as a purchaser without notice, allegations of ignorance of facts not admitted and not finally established are not essential.

Bail no longer is the *mundium*, and distinctions between bail and suretyship are nearly effaced. *Quære;* whether a contract to indemnify bail which is legal by statute in New York where made is void as against the public policy of the United States.

In this case, as the intervenor did not know of the suit or the position taken by defendant, who was legally her trustee, she should not be held guilty of laches.

184 Fed. Rep. 433, 107 C. C. A. 27, reversed.

THE facts are stated in the opinion.

*Mr. J. T. Coleman*, with whom *Mr. David McClure* and *Mr. A. E. Strode* were on the brief, for appellant:

An express contract to indemnify a person on his becoming bail for a prisoner charged with crime is not illegal in violation of public policy. *United States* v. *Ryder*, 110 U. S. 729, distinguished. That case only holds that where a recognizance in a criminal case is forfeited and paid by the bail, there is no implied contract on the part of the criminal to refund the money to the bail; but it also holds that an express contract to indemnify the bail in such case may be sustained.

In the bill of intervention in this case an express contract was averred. See *Simpson* v. *Robert*, 35 Georgia, 183; Rev. Stat., § 1014; *United States* v. *Rundlett*, 2 Curtis, 44; *United States* v. *Ewing*, 140 U. S. 142; *United States* v. *Horton*, Fed. Cas. No. 15,393; *United States* v. *Evans*, 2 Fed. Rep. 147; *United States* v. *Case*, 8 Blatchf. 250.

In the State of New York, where the contract between Leary and Green was made, a contract to indemnify a bail is not contrary to public policy. *Maloney* v. *Nelson*, 144 N. Y. 189; *S. C.*, 158 N. Y. 355.

The public policy of a State, with respect to contracts made within it and sought to be enforced therein, is obligatory upon the Federal courts whether acting in equity or at law. *Missouri &c. Trust Co.* v. *Krumseig*, 172 U. S. 351.

Indeed, there is no national public policy in cases like the one under consideration. Congress has adopted the statutes, and therefore the policy, of the several States in reference to bailing persons charged with crime, and has

assimilated all proceedings in such cases to the usual proceeding in the State in which the person is let to bail.

For one accused of crime to solicit bail is not immoral. For an accused person to offer indemnity to another to become his bail can hardly be illegal. If a stranger in a strange land could not offer such indemnity, he would, in most cases, have no alternative but to submit to deprivation of his liberty without trial.

*Mr. Marion Erwin,* Special Assistant to the Attorney General, with whom *The Solicitor General* was on the brief, for the United States:

The petition is without jurisdictional merit, and the appeal is for delay only.

The property in controversy equitably belonged to the United States, from a time antecedent to when it is claimed that Leary acquired the rights in the property relied upon in the petition; the petitioner failed to plead that such rights had been acquired by a *bona fide* purchaser.

It appears from the averments of the intervention, that at the time of the alleged agreement of January 20, 1902, relied upon by the petitioner to create an equitable lien in the stocks in controversy, the stocks were and for months had been held by and in the name of Kellogg for the sole benefit of Greene, and that there was no delivery or change of possession, and it was not provided in the agreement that Leary should ever be given possession, but only that Kellogg should, in the event of Leary's being held liable on the bond, apply the stocks to the payment of Leary's debt, and with the right reserved in Greene to withdraw said securities from Kellogg's possession and substitute others in their place. The facts pleaded do not create a legal or equitable lien on the stock in favor of Leary or constitute an assignment of the fund even in equity. *Christmas* v. *Russell,* 14 Wall. 70; *Trist* v. *Child,* 21 Wall.

447; *Casey* v. *Cavaroe*, 96 U. S. 467; *Third Nat. Bk.* v. *Insurance Co.*, 193 U. S. 581; *Williams* v. *Ingersoll*, 89 N. Y. 508; *Thomas* v. *Railway*, 139 N. Y. 163.

A refusal to grant leave to intervene is not ordinarily considered as finally adjudicating the rights of the parties on the merits. The petitioner may come back with a new petition or ancillary bill, curing defects of pleading and asserting rights not substantially asserted in the former petition.

This case does not fall within the exception to the rule where a third party asserts some right which will be lost in the event that he is not allowed to intervene before the fund is dissipated. *Credits Commutation Co.* v. *United States*, 171 U. S. 311.

Petitioner appealed from the order made on the petition as first presented, without attempting to amend or cure the defects, and by so doing waived all right to amend and made the adjudication of her rights in the subject-matter of the petition final. *The Three Friends*, 166 U. S. 1.

The request to amend here comes too late. *Nat. Bank* v. *Carpenter*, 101 U. S. 567.

This court is without jurisdiction to allow the amendments, or to entertain an appeal; for the mere purpose of allowing amendments not offered in the trial court, where neither the pleadings nor evidence in the trial court states a case.

Failure to aver *bona fide* purchase is fatal. *Smith* v. *Gale*, 144 U. S. 519; *Coffey* v. *Greenfield*, 62 California, 602; 11 Ency. Pl. & Practice, 506; *Minot* v. *Mastin*, 37 C. C. A. 238, 95 Fed. Rep. 839.

An intervenor must set out his demand as clearly and explicitly as a plaintiff. *Clapp* v. *Phelps*, 19 La. Ann. 461; *Davis* v. *Sullivan*, 33 N. J. Eq. 569; *Empire Dist. Co.* v. *McNulta*, 77 Fed. Rep. 703; *Buel* v. *Farmers' L. & T. Co.*, 95 Fed. Rep. 839-842.

It is not enough to say that Leary's claim is superior to the Government's claim, for that is a mere conclusion to be drawn or not drawn from the facts well pleaded. *Gould* v. *R. R. Co.*, 91 U. S. 526.

The failure of an intervenor to make proper averments excusing gross laches apparent on the face of an intervention, as in the case at bar, is fatal. *Lansdale* v. *Smith*, 106 U. S. 391; *Smith* v. *Gale*, 144 U. S. 509; *O'Brien* v. *Wheelock*, 184 U. S. 450; *Buel* v. *F. L. & T. Co.*, 44 C. C. A. 277; *Trust Co.* v. *Toledo &c., Ry.*, 82 Fed. Rep. 642.

The contract as one of indemnity for bail was against public policy.

Uncertain and ambiguous averments in pleadings must be construed most strongly against the pleader. The alleged contract of January 20, 1902, must be taken as asserting only an implied contract of a principal to indemnify bail in a criminal case. If so, the suit is fatally defective. *Ryder* v. *United States*, 110 U. S. 729, 737; *United States* v. *Simmons*, 47 Fed. Rep. 577; *Herman* v. *Jeunchner*, 16 Q. B. Div. 561; 3 A. & E. Ency. Law, p. 684; 16 A. & E. Ency. Law, p. 172.

Whatever may be the public policy of particular States as to the administration of the criminal laws, the public policy of the United States as declared by the Federal courts must control in the case at bar.

Prior to the enactment of the "Cash Deposit Law," the public policy of New York was held to be against such indemnification of bail by the principal in a criminal case, but not against indemnification by third parties. *People* v. *Ingersoll*, 14 Abb. Pr. (N. S.) 23, but see New York Code Crim. Proc., § 586.

This legislation changed the public policy of the State, so that a contract of a principal to indemnify bail is no longer against the public policy of the State. *Maloney* v. *Nelson*, 158 N. Y. 355.

While it is generally true that the public policy of a State with respect to contracts made within the State and sought to be enforced therein is obligatory on the Federal courts, whether acting in equity or at law, these views are not applicable to cases arising out of interstate commerce, where the policy to be enforced is Federal. *Missouri &c. Co.* v. *Kruning,* 172 U. S. 351; *United States* v. *Trans-Missouri Asso.,* 166 U. S. 290.

The provisions of § 33 of the Judiciary Act, § 1014, Rev. Stat., relate to bail as known at common law.

This court goes to the common law for definitions of common-law words, especially in matters of criminal procedure, and criminal procedure in the Federal courts is controlled by the common law. *United States* v. *Reid,* 12 How. 366; *Logan* v. *United States,* 144 U. S. 301; *Shaw* v. *Merchants' N. Bank,* 101 U. S. 557; *Brown* v. *Barry,* 3 Dall. 365; *The Abbotsford,* 98 U. S. 440; *Minot* v. *Mechanics' Bank,* 1 Pet. 46.

In the construction of the laws of Congress the rules of the common law furnish the true guide. *Rice* v. *Minn. R. R. Co.,* 1 Black, 358; *United States* v. *Freeman,* 3 How. 556; *United States* v. *Babbit,* 1 Black, 55; *Harrington* v. *United States,* 11 Wall. 356; *Ryan* v. *Carter,* 93 U. S. 78; *Reiche* v. *Smythe,* 13 Wall. 162.

Among the statutes *in pari materia* with § 1014 are §§ 1018, 1019, Rev. Stat., relating to the right of bail to arrest the principal and the surrender of persons charged with crime by their "bail" and the entry of *exonatur* upon the recognizance, etc. *United States* v. *Burr,* Fed. Cas., No. 14,694.

No law of a State made since 1789 can affect the mode of proceeding or the rules of evidence in criminal cases. *United States* v. *Reid,* 12 How. 366; *Logan* v. *United States,* 144 U. S. 301.

The law of the State allowing the substitution of a different species of security in lieu of bail at the option of

the defendant has no legal effect on Federal cases. *United States* v. *Ryder*, 110 U. S. 729.

A change in the public policy of the State of New York as a result of a legislative enactment, which authorizes the principal to contract to indemnify his surety in criminal cases, and destroys the effective safeguards provided by the interested watchfulness of common bail, is in contravention of the public policy of the United States, and the latter must prevail.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a petition for leave to intervene in a suit brought by the United States to charge the defendant Kellogg with a trust in respect of funds alleged to have been received by him from Greene and to have been obtained from the plaintiff by Greene through his participation in the well known Carter frauds. The funds specially referred to were certain shares of railroad stock standing in Kellogg's name but held in trust for Greene. The nature of the alleged frauds can be gathered from *United States* v. *Carter*, 217 U. S. 286. See *Greene* v. *Henkel*, 183 U. S. 249. The bill of intervention alleges the indictment of Greene and that the plaintiff's deceased became surety upon Greene's bail bond "upon the understanding and condition that the securities held in trust or on deposit" by Kellogg from Greene, being the above mentioned railroad stock, should remain in Kellogg's hands as security and indemnity to Leary for signing the bond. It goes on to allege Greene's failure to appear, a forfeiture of the bond, a suit upon it brought September 10, 1903, and a judgment for the United States against the intervenor on January 6, 1908. Finally the bill sets forth that the United States not only has got an injunction *pendente lite* forbidding Kellogg to deliver the fund to the intervenor to be used in partial liquidation of the judgment against her but is pressing the collection of the judgment;

and that the United States has no equity unless subject to that which the intervenor claims.

This suit was begun on December 19, 1903. The evidence had been taken and it was ready for final hearing when the petition for leave to intervene was filed, April 18, 1908. But the action on the bond seems to have been contested, and no judgment was entered until January 6, 1908, as we have said. The Circuit Court intimated an opinion that the bill of intervention was defective for want of an allegation that Leary, at the time of his agreement, did not know the facts alleged in the principal bill to raise a trust for the Government, and also that, so far as appears, it might be brought upon a supposed implied contract, whereas no such undertaking of indemnity would be implied by the law, citing *United States* v. *Ryder*, 110 U. S. 729. But observing that the petition might be amended in these respects, it held that amendment would be unavailing, as the contract was against public policy and void. 163 Fed. Rep. 442. The Circuit Court of Appeals, without deciding upon this last point, affirmed the decree on the above mentioned ground that Leary's knowledge was not negatived, and also on that of laches, apparent and unexplained. 184 Fed. Rep. 433. 107 C. C. A. 27.

The result is that the petitioner is denied her chance to be heard for want of amendments which the court that might have allowed them told her that it was no use to make as it was going to decide against her whatever she did. Even if the court would have allowed them, which is a speculation, it is holding a party to very technical rules to say that while one case was being dealt with below, he ought to have contemplated having to meet a different one above. But we need not consider that matter, as we are of opinion that the bill, without amendment, showed a sufficient right to intervene.

We lay on one side the suggestion that the intervention goes only upon an implied contract in its proper sense of

an obligation raised by the law irrespective of any real promise. That would seem to us a perverted interpretation of the words 'upon the understanding and condition' even if the contract were only a general one to indemnify, but a contract that certain specific stock in the hands of a trustee should be held as security for a specific contingent claim could not exist unless it was express. It would be none the less express if it was conveyed by acts importing it than if it was stated in words. The point that Leary's knowledge ought to have been denied impresses us hardly more. The plaintiff has not the legal title and is not claiming against an admitted prior equity as a purchaser without notice. Her position is that she does not know whether the United States has any equity or not, but that whatever rights the United States may have are inferior to hers. She is not called on to allege Leary's ignorance of facts that she does not admit and that are not yet finally established. We are of opinion that any one reading the bill in the same way that he would read an untechnical document would have no doubt that the plaintiff meant to put her case as we have taken it.

The only matters that seem to us to need argument are the questions of public policy and laches. As to the former the ground for declaring the contract invalid rests rather on tradition than on substantial realities of the present day. It is said that the bail contemplated by the Revised Statutes (§ 1014) is common-law bail and that nothing should be done to diminish the interest of the bail in producing the body of his principal. But bail no longer is the *mundium,* although a trace of the old relation remains in the right to arrest. Rev. Stat., § 1018. The distinction between bail and suretyship is pretty nearly forgotten. The interest to produce the body of the principal in court is impersonal and wholly pecuniary. If, as in this case, the bond was for $40,000, that sum was the

measure of the interest on anybody's part, and it did not matter to the Government what person ultimately felt the loss so long as it had the obligation it was content to take. The law of New York recognizes the validity of contracts like the one alleged, and without considering whether the law of New York controls we are content to say merely that the New York decisions strike us as founded in good sense. *Maloney* v. *Nelson,* 144 N. Y. 182, 189. *S. C.,* 158 N. Y. 351, 355.

As to laches, there is no legal presumption that the petitioner knew of this suit and still less that she knew the position taken by Kellogg. He set up that the stock was taken as indemnity to himself for his promise to indemnify Leary, &c., and said nothing about the petitioner's claim. If that claim is well founded and she knew of this suit, it was not laches in her to assume that Kellogg would do his duty as her trustee. She might be bound by a decree against him, but before decree on discovering his conduct she fairly may ask a chance to protect herself. Moreover as she disputed liability on the bond she had an additional reason for not moving until the case against her had gone to judgment. See *Anonymous,* 11 Mod. 2. On the whole matter it seems to us that she was dealt with too technically. She presents a case which unless read with an adverse mind is a good one on its face, and whatever misgivings we may entertain, we are of opinion that she ought to be allowed to try to prove it. In the circumstances it seems to us that the leave to intervene may be granted subject to the condition that the evidence already in shall be taken to be evidence against her subject to her right to recall and cross-examine such witnesses for the Government as she may be advised.

*Decree reversed.*

Mr. Justice McKenna and Mr. Justice Pitney dissent.