224 U.S. 567 (1912)
LEARY, ADMINISTRATRIX OF LEARY,
v.
UNITED STATES.
No. 508.
Supreme Court of United States.
Argued April 29, 30, 1912.
Decided May 13, 1912.
APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.
*568 Mr. J.T. Coleman, with whom Mr. David McClure and Mr. A.E. Strode were on the brief, for appellant.
Mr. Marion Erwin, Special Assistant to the Attorney General, with whom The Solicitor General was on the brief, for the United States.
*573 MR. JUSTICE HOLMES delivered the opinion of the court.
This is a petition for leave to intervene in a suit brought by the United States to charge the defendant Kellogg with a trust in respect of funds alleged to have been received by him from Greene and to have been obtained from the plaintiff by Greene through his participation in the well known Carter frauds. The funds specially referred to were certain shares of railroad stock standing in Kellogg's name but held in trust for Greene. The nature of the alleged frauds can be gathered from United States v. Carter, 217 U.S. 286. See Greene v. Henkel, 183 U.S. 249. The bill of intervention alleges the indictment of Greene and that the plaintiff's deceased became surety upon Greene's bail bond "upon the understanding and condition that the securities held in trust or on deposit" by Kellogg from Greene, being the above mentioned railroad stock, should remain in Kellogg's hands as security and indemnity to Leary for signing the bond. It goes on to allege Greene's failure to appear, a forfeiture of the bond, a suit upon it brought September 10, 1903, and a judgment for the United States against the intervenor on January 6, 1908. Finally the bill sets forth that the United States not only has got an injunction pendente lite forbidding Kellogg to deliver the fund to the intervenor to be used in partial liquidation of the judgment against her but is pressing the collection of the judgment; *574 and that the United States has no equity unless subject to that which the intervenor claims.
This suit was begun on December 19, 1903. The evidence had been taken and it was ready for final hearing when the petition for leave to intervene was filed, April 18, 1908. But the action on the bond seems to have been contested, and no judgment was entered until January 6, 1908, as we have said. The Circuit Court intimated an opinion that the bill of intervention was defective for want of an allegation that Leary, at the time of his agreement, did not know the facts alleged in the principal bill to raise a trust for the Government, and also that, so far as appears, it might be brought upon a supposed implied contract, whereas no such undertaking of indemnity would be implied by the law, citing United States v. Ryder, 110 U.S. 729. But observing that the petition might be amended in these respects, it held that amendment would be unavailing, as the contract was against public policy and void. 163 Fed. Rep. 442. The Circuit Court of Appeals, without deciding upon this last point, affirmed the decree on the above mentioned ground that Leary's knowledge was not negatived, and also on that of laches, apparent and unexplained. 184 Fed. Rep. 433. 107 C.C.A. 27.
The result is that the petitioner is denied her chance to be heard for want of amendments which the court that might have allowed them told her that it was no use to make as it was going to decide against her whatever she did. Even if the court would have allowed them, which is a speculation, it is holding a party to very technical rules to say that while one case was being dealt with below, he ought to have contemplated having to meet a different one above. But we need not consider that matter, as we are of opinion that the bill, without amendment, showed a sufficient right to intervene.
We lay on one side the suggestion that the intervention goes only upon an implied contract in its proper sense of *575 an obligation raised by the law irrespective of any real promise. That would seem to us a perverted interpretation of the words `upon the understanding and condition' even if the contract were only a general one to indemnify, but a contract that certain specific stock in the hands of a trustee should be held as security for a specific contingent claim could not exist unless it was express. It would be none the less express if it was conveyed by acts importing it than if it was stated in words. The point that Leary's knowledge ought to have been denied impresses us hardly more. The plaintiff has not the legal title and is not claiming against an admitted prior equity as a purchaser without notice. Her position is that she does not know whether the United States has any equity or not, but that whatever rights the United States may have are inferior to hers. She is not called on to allege Leary's ignorance of facts that she does not admit and that are not yet finally established. We are of opinion that any one reading the bill in the same way that he would read an untechnical document would have no doubt that the plaintiff meant to put her case as we have taken it.
The only matters that seem to us to need argument are the questions of public policy and laches. As to the former the ground for declaring the contract invalid rests rather on tradition than on substantial realities of the present day. It is said that the bail contemplated by the Revised Statutes (§ 1014) is common-law bail and that nothing should be done to diminish the interest of the bail in producing the body of his principal. But bail no longer is the mundium, although a trace of the old relation remains in the right to arrest. Rev. Stat., § 1018. The distinction between bail and suretyship is pretty nearly forgotten. The interest to produce the body of the principal in court is impersonal and wholly pecuniary. If, as in this case, the bond was for $40,000, that sum was the *576 measure of the interest on anybody's part, and it did not matter to the Government what person ultimately felt the loss so long as it had the obligation it was content to take. The law of New York recognizes the validity of contracts like the one alleged, and without considering whether the law of New York controls we are content to say merely that the New York decisions strike us as founded in good sense. Maloney v. Nelson, 144 N.Y. 182, 189. S.C., 158 N.Y. 351, 355.
As to laches, there is no legal presumption that the petitioner knew of this suit and still less that she knew the position taken by Kellogg. He set up that the stock was taken as indemnity to himself for his promise to indemnify Leary, &c., and said nothing about the petitioner's claim. If that claim is well founded and she knew of this suit, it was not laches in her to assume that Kellogg would do his duty as her trustee. She might be bound by a decree against him, but before decree on discovering his conduct she fairly may ask a chance to protect herself. Moreover as she disputed liability on the bond she had an additional reason for not moving until the case against her had gone to judgment. See Anonymous, 11 Mod. 2. On the whole matter it seems to us that she was dealt with too technically. She presents a case which unless read with an adverse mind is a good one on its face, and whatever misgivings we may entertain, we are of opinion that she ought to be allowed to try to prove it. In the circumstances it seems to us that the leave to intervene may be granted subject to the condition that the evidence already in shall be taken to be evidence against her subject to her right to recall and cross-examine such witnesses for the Government as she may be advised.
Decree reversed.
MR. JUSTICE McKENNA and MR. JUSTICE PITNEY dissent.