MATHIESON et al. v. CRAVEN et al.

(District Court, D. Delaware. June 16, 1917.)

No. 271.

1. EQUITY ⬤⟶114—SUITS—INTERVENTION.

Intervenor and complainant, entitled under the will of their grandfather to separable, though precisely similar, claims charged on real estate, joined in a bill in the federal court for enforcement of their claims. In order that the bill might not fail for want of requisite diversity of citizenship, it was amended by omitting intervenor. After the District Court had rendered an opinion that complainant was entitled to enforcement of her lien, and it appeared that those of the defendants who were residents of the state of which intervenor was a resident were unnecessary parties, intervenor applied for leave to intervene; the bill having been dismissed as to such unnecessary defendants. *Held* that, as complainant and intervenor were entitled to precisely the same relief, the intervention should be allowed, as separate suits by them would have been consolidated, and particularly as a sale of the lands for the enforcement of complainant's lien only would have placed the purchaser in so difficult a position that an advantageous sale would have been practically impossible; it being questionable whether a sale would not have been subject to the lien of intervenor.

2. EQUITY ⬤⟶82—LACHES—PENDENCY OF LEGAL PROCEEDINGS.

In such case, where intervenor consented to proceedings by complainant after the original bill was amended by omitting her as a complainant, though the evidence introduced at trial would necessarily affect her rights, intervenor's failure to file a bill in the state court, or by other means seek to establish her claim before termination of complainant's suit, did not amount to laches, in view of the fact that she would be put to great and unnecessary expense; evidence for and against her claim being offered and objected to by the parties as though she had been a complainant.

3. EQUITY ⬤⟶114—PRACTICE—INTERVENTION.

Where, after decree for complainant, another was allowed to intervene as co-complainant, an order, directing that all evidence adduced in the cause prior to intervention should stand and be read as evidence bearing on the existence and enforceability of the claim of intervenor so far as pertinent, is warranted; defendants having had full opportunity to examine and cross-examine witnesses, and adduce or oppose the introduction of documentary evidence, and it being immaterial that some of the witnesses, whose depositions or testimony would be read under the order, are no longer living.

4. EQUITY ⬤⟶114—PRACTICE—INTERVENTION.

Where, after decree for complainant, another was allowed to intervene as co-complainant, the evidence, oral and documentary, touching points common to the claims of complainant and intervenor, cannot be added to or affected by the introduction of further evidence after the intervention, for that would amount practically to a rehearing, would create confusion, lead to contradictory findings on the same subject, and encourage perjury.

5. EQUITY ⬤⟶114—SUPPRESSION OF TESTIMONY—RIGHT TO.

Evidence relating to common claims of complainant and intervenor, who was allowed to intervene as co-complainant after decree for complainant, which was taken under improper insistence of counsel for defendant, when the case was referred to an examiner for the taking of evidence, may on return be suppressed.

In Equity. Bill by Catharine P. Mathieson and another against Thomas J. Craven, executor and trustee under the will of Thomas Jami-

---

son, deceased, and others. After decree for complainants and dismissal of the bill as to defendants Oliver V. Jamison and others, Vesta L. Bastian and another petition to intervene. Petition granted, and decree for intervenors.

See, also, 164 Fed. 471, 228 Fed. 345.

Walter J. Willis, David T. Marvel, and Josiah Marvel, all of Wilmington, Del., for complainants.

Alexander B. Cooper, of Wilmington, Del., for defendant Green.

John F. Biggs and Armon D. Chaytor, Jr., both of Wilmington, Del., for defendant Biggs.

Josiah O. Wolcott, of Wilmington, Del., for defendants Lofland.

Thomas F. Bayard, John P. Nields, and Herbert H. Ward, all of Wilmington, Del., for defendant Craven.

BRADFORD, District Judge. [1] After this court reached the conclusion and rendered an opinion that under the amended bill and pleadings and the evidence Mrs. Mathieson was entitled to one-half of the sum of $16,000 charged upon the Capelle farm, the Jamison Corner farm and the Homestead farm, on due application to the court the bill was dismissed as to nine of the defendants named therein, including Oliver V. Jamison, Laura Jamison, Clarence Jamison, Florence Jamison and Helen Grebb, citizens of Pennsylvania, whose presence as parties in the suit defeated the jurisdiction of the court so far as granting relief under the original bill to Mrs. Bastian was concerned, she and her husband being citizens of Pennsylvania. After the bill had been dismissed as to the parties defendant above referred to, on due application leave was granted to Mrs. Bastian and her husband to intervene as co-complainants with the Mathiesons. There were cogent reasons for the intervention. If it had not been allowed and the defendants should have failed voluntarily to pay the several amounts due to Mrs. Mathieson, and the three farms had been exposed to public sale under the decree of this court, bidders at the sale would have occupied a position so difficult and embarrassing as to render an advantageous sale of the property practically impossible. For in the case supposed, this suit not being a proceeding strictly in rem, it would have been gravely questionable whether the sale of the farms would not have been subject to whatever right, title or interest therein Mrs. Bastian possessed prior to such sale. A cloud on the title of the purchaser would have been created. The sale of the farms would necessarily have been either subject to the lien claim of Mrs. Bastian or free and discharged from it. In the former case, if the proceeds of sale of any one of the farms would not have sufficed to pay and satisfy the lien claim of Mrs. Mathieson against it, discrimination, contrary to the fundamental equitable principle of equality, would have resulted against her and in favor of Mrs. Bastian, as the farm so sold would have remained subject to the lien claim of the latter. And in order that Mrs. Mathieson and Mrs. Bastian should be placed on the plane of equality it would have been necessary that the latter should in some mode have been brought into the suit as a party and made subject to the order and decree of the court. If, on the other hand, the

sale of the farms would have been free and discharged from the lien claim of Mrs. Bastian, there would have been serious embarrassment in case the lien claim of Mrs. Mathieson against any one of the farms amounted to more than one-half of the net proceeds of sale of that farm. For in order to determine how much of such proceeds of sale should be applied to the lien claim of Mrs. Mathieson it would be necessary to ascertain the existence and extent of the lien claim of Mrs. Bastian, and to that end that the latter should in some mode appear in or be brought before the court. In any aspect of the case it was desirable that Mrs. Bastian should intervene in the cause, not only for the protection of her own interests but that justice might be done to Mrs. Mathieson. A resort by Mrs. Bastian to a suit in a state court or a new suit in this court for the enforcement of her rights would have been dilatory, burdensome and embarrassing both for Mrs. Mathieson and herself. Indeed, had the original bill in this case been filed by the Mathiesons alone, and had Mrs. Bastian at that time brought suit in this court, and had the necessary diversity of citizenship existed, it is highly probable that an order of consolidation would have been made and the two cases tried together. In Brinckerhoff v. Holland Trust Co. (C. C.) 146 Fed. 203, it was held by the circuit court for the southern district of New York that where a petitioner for leave to intervene alleges rights in the subject-matter of the suit which make him a proper party, and his intervention will not prejudice the rights of other parties but rather tend to facilitate the final determination of the rights of all of the parties, his petition should be granted. Judge Coxe said:

"That he [the petitioner] is a necessary party is not apparent but that he is a proper party is sufficiently clear. With the petitioner on the record all the interested parties are before the court and a decree can be entered determinative of the entire controversy. It is for the interest of all concerned that the questions still in dispute between the parties shall be decided in the pending suit: to commence a new suit will only protract litigation and increase expense."

A fortiori it was proper to allow an intervention in the cause before this court. In disposing of the demurrer to the amended bill in this case the court used language (164 Fed. 471, 479, 481) not without application in this connection:

"It appears from the amended bill that Mrs. Bastian, as one of the children of Edgar Jamison, is entitled, if entitled at all, to precisely the same measure and kind of relief as Mrs. Mathieson. * * * It is true that the ascertainment of what is due to Mrs. Mathieson involves primarily an ascertainment of what is due to both Mrs. Bastian and Mrs. Mathieson; and it is also true, that, other things being equal, Mrs. Bastian should be a party in order that the defendants should not be compelled to account to her separately from Mrs. Bastian. * * * It is proper, also, to add that certain questions may or may not arise in this suit or certain proceedings hereafter be resorted to therein, the solution or effect of which may or may not tend to obviate the trouble to which it has been suggested the executor, trustee or purchaser may be put, if the bill in its present shape be maintained. It appears that Mrs. Bastian 'consents to the relief sought in this bill and to all proceedings had and to all orders or decrees made or that may be made by the court in this cause,' and further, that Mrs. Bastian originally joined as a co-complainant in this case to recover the separable claim made by her. Under these circumstances it is possible, if not probable, that she may apply

so to intervene in the suit as to result in a sale of the real estate discharged from any lien in her favor and free from cloud or incumbrance on the title."

[2] It has been strenuously contended on the part of the defendants that notwithstanding the intervention of Mrs. Bastian and her husband as parties complainant in this cause, no decree properly can be made in her favor by reason of alleged laches on her part. This position is untenable. On the subject of laches, this court has said in this cause on a former occasion (228 Fed. 345, 378):

"Laches with respect to the bringing of suit is unreasonable and inequitable delay in proceeding for the enforcement of a demand or right viewed in the light of the circumstances of the particular case. No rigid rule as to lapse of time is applicable. It is essentially an equitable defense, and does not depend, like the operation of a statute of limitations, upon the mere passage of time, but upon the equity or inequity of permitting the asserted claim or demand to be enforced."

Tested by the above definition of laches in connection with the bringing of suit I am unable to perceive that it attaches to Mrs. Bastian in the slightest degree. She and her husband were co-complainants in the bill as originally filed, and this court has held that there was no laches on the part of the complainants prior to the institution of the suit. By amendment the Bastians were omitted from the bill, they being citizens of Pennsylvania, of which state some of the defendants were also citizens, in order that this court might retain jurisdiction of the cause by reason of diversity of citizenship. The amended bill stated that:

"The said Vesta L. Bastian consents to the relief sought in this bill and to all proceedings had and to all orders or decrees made or that may be made by the court in this cause."

And on this point she testified:

"Q. Mrs. Bastian, do you consent to the proceedings taken in this cause by your sister and her husband and without yourself being a party? A. Yes, sir. Q. Do you consent to the further proceedings that may be taken in this cause, including such action, or decree, as the court may make thereon? A. Yes, sir."

It is unquestionably true, as stated by the court in disposing of the demurrer:

"Mrs. Mathieson certainly had a right to sue in this court for the relief sought by her. It is equally certain that Mrs. Bastian did not have a right to sue as co-complainant for the relief sought by her, as jurisdiction would thereby be ousted. Mrs. Bastian, therefore, was dropped as a party," etc.

Mrs. Bastian could not compel Mrs. Mathieson to consent to a dismissal of the bill as against those defendants between whom and Mrs. Bastian there was no diversity of citizenship, and indeed, until after the opinion of this court had been rendered on final hearing, when for the first time it became plain that those defendants were not necessary parties to the cause, it did not appear to Mrs. Mathieson or her counsel that the bill could with safety be dismissed as to such defendants. Mrs. Bastian having been dropped as a party in order that jurisdiction of the cause might not be defeated, did not display any negligent disregard of her rights and interest in the subject-matter of the controversy. She did not become indifferent to

or abandon the assertion of such rights and interest. She was placed in a position of difficulty. It is true she might on being dropped as a party to this cause have brought suit in the court of chancery of Delaware for the enforcement of her lien claim against the farms, or have proceeded in an independent suit in this court for the same purpose. But the conduct of such suit, whether in the court of chancery or in this court, would have involved either great and unnecessary expense, or as much delay in reaching a conclusion as does the intervention of Mrs. Bastian and her husband now under consideration. Had Mrs. Bastian in such independent suit delayed or caused to be delayed the final hearing until she could take advantage in her suit of the evidence adduced in this cause on points common to the claims of Mrs. Bastian and Mrs. Mathieson respectively, she would have incurred the peril of being charged with laches in proceeding for the enforcement of her rights, and in the same degree as she is now charged with in the matter of her intervention. On the other hand, if without so waiting to take advantage of evidence adduced in this cause on points common to both lien claims, Mrs. Bastian had proceeded to establish her claim in an independent suit, she would have incurred much, and, I think, unnecessary expense in the production of proofs similar to and substantially the same as those now before this court. It is clear to a moral demonstration that Mrs. Bastian after being dropped as a party did not intend to abandon her rights under the will of Thomas Jamison. And it is equally clear that she did nothing calculated to induce the defendants, or any of them, to believe that she had such intention, or in any manner to prejudice them in the presentation of their defense. Not only did she disclose the fact that she felt an interest in the controversy before this court by consenting to and agreeing to be bound by the proceedings and decree therein, but Mrs. Mathieson's counsel who were equally her counsel in the bill as originally filed, and are now her counsel, examined witnesses and adduced evidence as well in her favor as in favor of Mrs. Mathieson, and in the same manner and to the same extent as if Mrs. Bastian had not been dropped as a party to the record. And equally the defendants examined witnesses and adduced evidence against her in the same manner and to the same extent as if she had continued a party of record. In view of the foregoing circumstances I do not perceive how Mrs. Bastian could have adopted a wiser course or one better calculated to exclude any suspicion of laches on her part with respect to the enforcement of her rights.

[3] Mr. and Mrs. Bastian having been allowed to intervene in this cause as co-complainants, the court subsequently, on the application of their counsel, made an order providing as follows:

"That all the evidence adduced in said cause prior to the intervention of the said intervenors shall stand and be read as evidence bearing upon the existence and enforceability of the alleged rights and claim of the intervenors, so far as pertinent thereto, and shall be considered by the court in the determination of said rights and claim, subject to such objections to said evidence as were made during the presentation thereof."

One effect of this order was that all evidence adduced in this cause prior to the intervention in proof or disproof of points common to the

alleged claims of Mrs. Mathieson and Mrs. Bastian should stand as evidence and the only evidence to be considered by the court on such common points. The defendants having had full opportunity to examine and cross-examine witnesses and to adduce or object to the introduction of documentary evidence on such common points, and having taken advantage of that opportunity, such evidence, oral and documentary, is admissible against them; and the intervenors having made application to the court that all the evidence adduced in this cause by the complainants and defendants prior to the intervention should be read and considered by the court it has the same force as against the intervenors as it had against Mrs. Mathieson prior to the intervention. The propriety of a special order in a court of equity for the reading and consideration of such evidence in favor of subsequent intervenors as against those who have had full opportunity to examine and cross-examine witnesses and adduce or oppose the introduction of documentary evidence is well settled; and it is immaterial that witnesses whose depositions or testimony it is proposed to read are no longer living. 1 Greenl. on Ev. § 553; 3 Greenl. on Ev. § 341; 1 Dan. Ch. Pl. & Pr. *869, *870; Dawson v. Smith's Will, 3 Houst. (Del.) 335; Wade v. King, 19 Ill. 301, 308; Evans v. Evans, 23 N. J. Eq. 180; 2 Wig. on Ev. §§ 1386, 1387; Leary v. United States, 224 U. S. 567, 576, 32 Sup. Ct. 599, 56 L. Ed. 889, Ann. Cas. 1913D, 1029; Nevil v. Johnson, 2 Vern. 447; Williams v. Broadhead, 1 Sim. *151.

[4] And it is sound doctrine that the evidence, oral and documentary, touching points common to the claims of the complainants and subsequent intervenors cannot be added to or affected by the introduction of further evidence after the intervention, for the reason that the introduction of such further evidence would practically amount to a rehearing of the case on such points, already determined on full consideration, and the further reason that its introduction would tend to create confusion, lead to contradictory findings on the same points, encourage perjury and defeat the due administration of justice. To permit the defendants after intervention to go into evidence touching points common to the claims of Mrs. Bastian and Mrs. Mathieson respectively and covered by the evidence in this case adduced before the intervention would be as objectionable, and for the same reasons, as to permit the plaintiff in a cross-bill, filed after publication in the original cause, to go into evidence touching points covered by the evidence so published. According to the settled chancery practice, subject to certain exceptions not pertinent here, this can not be done. In Field v. Schieffelin, 7 Johns. Ch. (N. Y.) *251, 11 Am. Dec. 441, Chancellor Kent said:

"It is a well established rule, that a cross bill must be brought before publication has passed in the first cause, unless the plaintiff in the cross bill go to a hearing on the depositions already published. Rep. temp. Finch, 103; Wyat's P. R. 85; Cooper's Pl. 87; 1 Johns. Ch. Rep. *64. The object of the rule is to prevent the danger of perjury. It is founded in sound policy, and in a just sense and deep knowledge of the seductions of interest, and the force and influence of the passions. * * * The court will sometimes at the hearing, and in its discretion, direct a cross bill; but this is when it appears that the suit is insufficient to bring before the court the

rights of all the parties, and the matters necessary to a full and just determination of the cause. Mitf. Pl. 77. And these instances which I have mentioned, are the utmost length to which the court has gone in the admission of cross bills; they must be brought before publication, and testimony taken in them afterwards cannot be used, unless where some new matter of defense, as a release, arises after the cause is at issue, or the case appears, at the hearing, too imperfect to reach and settle the rights of all the parties. It is too late, after publication, to introduce new and further testimony to the matter in issue, by the contrivance of a cross bill. It would be doing, in an indirect way, per obliquum, what is forbidden to be done directly. * * * It is infinitely important to the due administration of justice, that the rules of evidence should be stable, and not made to yield to the convenience, or even hardship, of a particular case. If a cross bill could be filed in such a stage of the cause as is presented in this case, and to enable the party to make a fuller defence, 'by putting in issue and establishing the matters aforesaid, (and which were the matters in issue in the original cause,) and such other matters as he might be advised to establish,' the practice of the court would be broken up; litigation would become oppressive, vexatious, and interminable; the door would be opened for fabricated testimony to supply defects, and remove the pressure upon the case; and arbitrary discretion would be substituted for established rules."

In the above case there was an application for a rehearing, as there was in the case now pending, and also for leave to file a cross bill, and both were denied. Touching the rehearing sought the court said:

"If the Chancellor is satisfied that the cause has been exhausted by argument, and if he has given to the case the best examination in his power, and has arrived to a conclusion which satisfies his judgment, I see no propriety, nor use, nor justice, in granting a rehearing. Lord Thurlow once refused to grant it; and I think that this case, under all its circumstances, is one in which the discussion should be closed in this court, and the defendant put to his regular constitutional remedy, by appeal."

To allow the defendants to go into further evidence as to matters in issue common to both claims, and testified to before the intervention, would essentially involve a rehearing of this cause, which, under the circumstances, would be both improper and unjustifiable.

The order above quoted, however, does not have the effect of precluding either the intervenors or the defendants from adducing evidence not touching points common to the claims of the intervenors and their co-complainants but relating to points personal to the intervenors and not affecting their co-complainants.

[5] After the intervention the issue raised by the intervening petition and pleadings were referred to an examiner for the taking of evidence germane thereto, who took and returned certain evidence adduced by the intervenors and defendants respectively. Some of the evidence so returned was on objection suppressed by this court as having been taken under improper insistence of the counsel for the defendants. See Scott v. Paschall, 12 Sim. *550; Paschall v. Scott, 1 Phillips, *110. The evidence so suppressed related to points strictly common to the claims of Mrs. Mathieson and Mrs. Bastian respectively, touching which the defendants had prior to the intervention made an exhaustive examination of witnesses and documentary evidence. This cause came to a final hearing on the evidence taken therein prior to the intervention and on the evidence taken and returned by the examiner other than that suppressed by the court as above men-

tioned. The lien claim of Mrs. Bastian is in all respects as strongly supported as was the lien claim of Mrs. Mathieson, and consequently there must be a decree in favor of both of them, declaring that they are each entitled in equal shares to the sum of $16,000 which, under the will of Thomas Jamison and by virtue of proceedings had pursuant to it became chargeable against and a lien upon the said three farms in the shares and proportions set forth in the opinion of this court filed in this cause November 8, 1915 (228 Fed. 345, 387), together with interest thereon at the rate of six per cent. per annum from May 1, 1886, the date of the death of their father, Edgar Jamison; and further, that one equal third part of the total costs in this cause to be taxed by the clerk shall be paid by the defendant Eliza C. Green, one other equal third part thereof by the defendants Lawrence Lofland and Martha Lofland, and the remaining equal third part thereof by the defendant John F. Biggs; and further, that unless within sixty days next following the date of the decree to be entered pursuant to this opinion the defendants Eliza C. Green, Lawrence Lofland and Martha Lofland, and John F. Biggs, respectively, owning or claiming to own the said three farms, shall pay or cause to be paid to Mrs. Mathieson and Mrs. Bastian, respectively, in equal shares the aggregate sums of money including principal and interest, chargeable against and a lien upon the said farms respectively, together with interest upon said aggregate sums at the rate aforesaid from and after the date of said decree until payment, and shall pay to the clerk costs accrued up to the time of such payment, in the parts and proportions aforesaid, the three farms or such of them with respect to which the defendants or defendant so owning or claiming to own the same shall have omitted to make or cause to be made such payment or payments, shall be exposed to sale and sold after such notice, by such person, in such manner and on such terms and conditions as shall be provided in the said decree, for the purpose of paying and satisfying all or any part of the aggregate sum or sums hereby declared to be chargeable against and a lien upon the said farms and due and payable to the said Mrs. Mathieson and Mrs. Bastian, or either of them, remaining unpaid, together with costs as aforesaid, and interest at the rate of six per cent. per annum from and after the date of said decree; and further, that the proceeds of sale shall be applied and distributed as shall be directed in the said decree; and further, that the court shall retain jurisdiction of this cause and the right to make from time to time such further orders and decrees therein as may be necessary to effectuate its object and as to justice shall appertain.

A decree will be entered in accordance with this opinion.