## CHRISTOFFEL v. UNITED STATES.
### No. 10568.

United States Court of Appeals
District of Columbia Circuit.

Sept. 20, 1951.

Dissenting Opinion April 17, 1952.

Clark, Circuit Judge, dissented.
See also C.A.D.C., 190 F.2d 585.

562

David Rein, for appellant.

O. John Rogge, entered an appearance for appellant.

John S. Pratt, Atty., Dept. of Justice, pro hac vice, by special leave of court, for appellee.

Before STEPHENS, Chief Judge, and CLARK and BAZELON, Circuit Judges.

STEPHENS, Chief Judge.

The appellant, Harold R. Christoffel, hereafter referred to as "Christoffel," was indicted in the United States District Court for the District of Columbia for the crime of perjury. There were six counts in the indictment. After a trial upon a plea of not guilty Christoffel was found guilty by a jury and was sentenced to imprisonment for a period of 2 to 6 years on each of the counts, the sentences to run concurrently. Christoffel made application to the District Court for admission to bail pending appeal. That application was denied. He then appealed to this court from the conviction and applied to this court for admission to bail. This court, acting under Rule 46 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., upon a hearing, found that the case involved a substantial question which should be determined on the appeal and on April 6, 1950 ordered Christoffel admitted to bail. Rule 46, so far as here pertinent, provides:

". . . Bail may be allowed pending appeal or certiorari only if it appears that the case involves a substantial question which should be determined by the appellate court. Bail may be allowed by the trial judge or by the appellate court or by any judge thereof or by the circuit justice. The court or the judge or justice allowing bail may at any time revoke the order admitting the defendant to bail, [Rule 46(a) (2)] * * *

". . . If the defendant is admitted to bail, the amount thereof shall be such as in the judgment of the commissioner or court or judge or justice will insure the presence of the defendant, having regard to the nature and circumstances of the offense charged, the weight of the evidence against him, the financial ability of the defendant to give bail and the character of the defendant. [Rule 46(c)]

". . . A person required or permitted to give bail shall execute a bond for his appearance. One or more sureties may be required,

cash or bonds or notes of the United States may be accepted and in proper cases no security need be required. Bail given originally on appeal shall be deposited in the registry of the district court from which the appeal is taken." [Rule 46(d)]

The order of this court, dated April 6, 1950, admitting Christoffel to bail was phrased as follows:

"On consideration of the petition of the appellant herein for release on bail pending appeal, of the response of the appellee thereto, and of the appellant's reply, It is

"ORDERED by the Court that the appellant herein be, and he is hereby, admitted to bail pending disposition of this appeal upon his filing in this Court of a bond in the penal sum of ten thousand dollars ($10,000), with corporate surety, to be approved by the Clerk of this Court, or upon furnishing to the Clerk of the United States District Court for the District of Columbia ten thousand dollars ($10,000) in cash, or bonds or notes of the United States, and executing a bond for his appearance, pursuant to Rule 46(d) of the Federal Rules of Criminal Procedure; appellant's bond to be conditioned upon his surrendering himself forthwith to the custody of the United States Marshal for the District of Columbia when properly called upon to do so, to be dealt with and proceeded against in his case according to law in case the judgment appealed from in his case on appeal herein shall be affirmed, or the appeal be for any cause dismissed or the judgment be reversed and a new trial ordered."

On April 8, 1950, Christoffel and one Milton Wolff executed and filed with the Clerk of the District Court a recognizance on appeal in the following terms:

" . . . THE DEFENDANT and MILTON WOLFF surety, acknowledge themselves indebted to the United States in the sum of Ten-Thousand ($10,000.00) ($10,000.00 U. S. Treasury Bonds deposited) dollars, to be levied of their and each of their lands and tenements, goods, and chattels, if the said defendant HAROLD ROLAND CHRISTOFFEL fail to forthwith surrender himself to the custody of the Marshal of this District to be dealt with and proceeded against according to law in case the judgment appealed from shall be affirmed, or the appeal for any cause dismissed, or the judgment be reversed and a new trial ordered, or if the said defendant depart the Court without leave. . . . "

On April 10 there was deposited with the Clerk of the District Court by Milton Wolff $10,000 in United States Treasury bonds. According to an endorsement by Wolff upon the face of the recognizance, this was deposited "as cash bail in lieu of Surety Bond." A receipt issued by the Clerk noted that the bonds were "Received of Milton Wolff, as collateral. . . . " The execution of the bail bond by Christoffel and Wolff and the deposit of the $10,000 in Treasury bonds by Wolff was in purported satisfaction of the second alternative in the bail order of this court of April 6, 1950.

On August 7, 1951, the appellee United States, hereafter referred to as the "Government," moved in the District Court for an order directing Christoffel to show cause why the bail bond filed as above described should not be cancelled. The Government's motion represented that:

" . . . at the time of the execution of said bail bond on April 10, 1950, Milton Wolff was the assistant treasurer of the bail fund or other official of the Civil Rights Congress; that the $10,000 of United States Treasury bonds which he deposited as aforesaid were the property of said Civil Rights Congress; and that, in executing said bail bond and in depositing said securities, the said Milton Wolff was acting in a representative capacity for and in behalf of said Civil Rights Congress.

" . . . that said Civil Rights Congress is not a reliable or satisfactory agency to secure the attendance of said Christoffel at any time his presence is required by the order of the United States Court of Appeals or of this court, for the reason that, acting in a similar capacity as bondsman for other and numerous defendants and convicts, said Civil Rights Congress has failed to produce and to secure the attendance of such defendants and convicts in accordance with appropriate orders of court therein. . . . "

The District Court issued an order to show cause, returnable on August 20, 1951, and a hearing was held on that date on the Government's motion, the court's order to show cause and the return. At the hearing, counsel for the Government presented to the District Court in support of the motion various affidavits and exhibits, and counsel for Christoffel presented a memorandum and supplemental memorandum in opposition. The District Court found that the representations in the Government's motion had been sustained and that court, on September 5, 1951, ordered and adjudged that "the bail bond executed by said Milton Wolff" be cancelled and vacated as of 12 o'clock noon on Friday, September 14, 1951, and ordered further that Christoffel either at that time surrender to the United

States Marshal for the District of Columbia or by that time furnish new bail and "securities" as required by the order of the Court of Appeals of April 6, 1950; the said bail and "securities" to be subject to the approval of the District Court. That court further ordered that if Christoffel failed on or before the time and date mentioned either to surrender or to furnish new bail and new "securities" as required, the $10,000 in Treasury bonds deposited by Milton Wolff should be forfeited to the United States.[1]

On September 12, 1951, Christoffel filed in this court the present application for a supplemental order continuing the appellant on bail and for other appropriate relief. This application recited the entering of the bail order of this court of April 6, 1950, the deposit by Wolff with the Clerk of the District Court of Treasury bonds, the motion of the Government for revocation of Christoffel's bail, and the order of the District Court. The application alleged that the District Court's order is in conflict with the bail order of this court of April 6, 1950 in that it required a surety in addition to $10,000 in cash or bonds or notes of the United States and a bond executed by Christoffel. The application alleged further that the District Court lacked jurisdiction to make its order and that Christoffel had not been able in the time available to make arrangements for other bond, and the application requested that Christoffel be continued on bail "upon the securities presently posted in the United States District Court" and that the order of that court of September 5, 1951 be revoked; and the application prayed for such other and appropriate relief as the circumstances might require. The application by Christoffel is resisted by the Government.

On September 13, 1951, Christoffel's application came on for hearing in this Court of Appeals—at the outset in respect of the questioned jurisdiction of the District Court to enter its order of September 5. After hearing argument, this court took the point under advisement. Thereafter, this court entered an order directing that the Government make a showing at 10:30 a. m., September 14, why the order of April 6, 1950 allowing the appellant to be released on bail should be revoked or modified, and directing Christoffel to show cause at the same time why that order should not be revoked or modified. On September 14, 1951, on convening, this court ruled, Circuit Judge Clark dissenting, that the District Court was without jurisdiction to enter its order of September 5, 1951 and that the Government's motion for an order to show cause why the bond should not be cancelled should have been filed in this court, not in the District Court. The court so ruled for the following reasons: The order admitting Christoffel to bail and defining the conditions of bail was the order of this court, not of the District Court; the only authority of the District Court under the circumstances was that arising under the provision of Rule 46, above set forth, that "Bail given originally on appeal shall be deposited in the registry of the district court from which the appeal is taken"; and the order of April 6, 1950 provided merely, so far as the District Court is concerned, that if Christoffel availed himself of the second alternative in the order, the $10,000 in cash or bonds or notes of the United States should be furnished to the clerk of that court. Upon the foregoing ruling by this court, the Government made an oral motion reiterating in this court its motion filed in the District Court to cancel the bail bond. The Government moved further that the order of this court of April 6, 1950 be either revoked and Christoffel denied bail and placed in custody pending the appeal, or modified so as to require him not only to deposit $10,000 in cash or bonds or notes of the United States and execute a bond for his appearance but, in addition thereto, to furnish a surety for his appearance. Thereafter, on September 14, 1951, a further hearing was held—upon Christoffel's application for

1. The use of the word "securities" in the order of the District Court appears to be a clerical error since upon the whole of the order it is clear that the court was requiring new bail and a new surety.

a supplemental order, upon the Government's motion for revocation or modification of this court's order of April 6, 1950, and upon the court's order directed to both the Government and Christoffel to show cause.

## I.

 In support of the Government's motion for an order cancelling the bail bond filed with the Clerk of the District Court, Government's counsel presented all of the affidavits and exhibits which were presented to the District Court at the hearing there, and also the memorandum and supplemental memorandum submitted to the District Court by counsel for Christoffel. This court has considered these affidavits, exhibits and memoranda and, without division, concludes therefrom that the representations of the Government as made in its motion filed in the District Court are substantially supported. This court, therefore, decides that the bail furnished in behalf of Christoffel was not satisfactory and must be disapproved. The court rules that the Civil Rights Congress is not a satisfactory surety and not a satisfactory source of cash or other bail.

 The court finds unsupportable the contentions of counsel for Christoffel in opposition to the Government's motion. Counsel contends, first, that since the second alternative in this court's bail order of April 6, 1950 did not require a surety in addition to cash or bonds or notes of the United States and the execution by Christoffel of a bond for his appearance, the dependability of the Civil Rights Congress as surety is not material. The court finds this contention not persuasive because, even though a surety was not required, the court should accept no surety offered which is not satisfactory; also because the bond as executed and the endorsed deposit of the United States Treasury bonds constitute an inseverable legal act; further because money furnished as bail by an organization shown to have failed to secure the attendance of defendants on bail in other criminal cases in which it had acted as surety is an undependable inducement to the appearance of Christoffel in the instant case. Counsel contends, second, that the authorities teach that the reliability of a person furnishing bail is questioned only where he *promises* to pay in the event of non-appearance of the defendant and not where he deposits cash or valuable property. Counsel cites the following cases: Leary v. United States, 1912, 224 U.S. 567, 32 S.Ct. 559, 56 L.Ed. 889; United States v. Ryder, 1884, 110 U.S. 729, 4 S.Ct. 196, 28 L.Ed. 308; Concord Casualty & Surety Co. v. United States, 2 Cir., 1934, 69 F.2d 78, 91 A.L.R. 885; Rowan v. Randolph, 7 Cir., 1920, 268 F. 529; United States v. Davis, D.C.S.D.N.Y.1942, 47 F.Supp. 176; United States v. Widen, D.C.N.D.Ill.1930, 38 F.2d 517. Examination of these cases indicates that they do not stand for the proposition stated.[2] Counsel for Christoffel contends, third, that under Section 15 of

2. In Leary v. United States, the question was whether or not a private contract of indemnity between a criminal defendant and a surety upon his bail bond was against public policy. The decision was in the negative. It was said in the course of the opinion: "It is said that the bail contemplated by the Revised Statutes (§ 1014) is common-law bail and that nothing should be done to diminish the interest of the bail in producing the body of his principal. But bail no longer is the *mundium*, although a trace of the old relation remains in the right to arrest. Rev.Stat. § 1018. The distinction between bail and suretyship is pretty nearly forgotten. The interest to produce the body of the principal in court is impersonal and wholly pecuniary. If, as in this case, the bond was for $40,000, that sum was the measure of the interest on anybody's part, and it did not matter to the Government what person ultimately felt the loss so long as it had the obligation it was content to take." But this language is no longer persuasive in view of the terms of Rule 46(d) of the Federal Rules of Criminal Procedure quoted above. In United States v. Ryder, the sole question presented was whether or not one who furnished bail could be subrogated to the rights of the United States against the property of a defendant who had forfeited bail. It was held that such subrogation was not allowable but only a subrogation to the Government's means of seizing the person of the principal and compelling him to ap-

Title 6 United States Code, any person required by the laws of the United States to furnish a recognizance with a surety or sureties may, in lieu of the same, deposit United States Liberty Bonds or other bonds or notes of the United States in a sum equal to the amount of the recognizance required. Assuming, without deciding, that this section is applicable to bail bonds in criminal cases, the court thinks that, in view of the purpose of bail to secure the personal appearance of a defendant, the section cannot be read to limit the power of a United States court to refuse to accept as bail United States bonds or notes supplied from an undependable source.

## II.

In respect of the Government's motion that the order of this court of April 6, 1950 be either revoked and Christoffel denied bail, or modified so as to require Christoffel under the second alternative to furnish a surety for his appearance in addition to the deposit of $10,000 in cash or bonds or notes of the United States and the execution of a bond by Christoffel for his appearance: For the reasons hereafter stated this court, Judge Clark dissenting, concludes that this motion should be denied.

The factors which courts generally consider in determining whether or not to admit to bail a defendant in a criminal case include the ability of the accused to give bail, the nature of the offense, the penalty imposed, the character and reputa-

tion of the accused, the probability of his appearing when ordered to appear, and the existence in the case, if it is on appeal, of a substantial question which should be determined by the appellate court.[3] These factors are epitomized in Rule 46 of the Federal Rules of Criminal Procedure and in that rule, in respect of cases on appeal, the last factor is made an absolute prerequisite. Moreover, even if there is a substantial question in a case on appeal, admission to bail is, under Rule 46, not a matter of right but a matter within the discretion of the court. But where in a case on appeal a substantial question is shown to exist and the court is convinced upon a showing that conditions of bail may be defined, and met by the defendant, which will insure his presence when ordered, it is usual for a court to admit to bail pending disposition of the appeal; for courts are loath to risk, if it can providently be avoided, subjection of a person to punishment when not validly convicted.

The courts have, of course, power to revoke an order admitting to bail. This is expressly provided for in Rule 46. The power to revoke implies also the power to modify. But neither revocation of an order admitting to bail nor modification of the terms thereof is to be arbitrarily done. Proper showing of a reason for revocation or modification must be made.

In the instant case this court, after first determining that the case involves a substantial question which should be determined on appeal, and after giving due

pear. In Concord Casualty & Surety Co. v. United States, the sole question was whether or not the United States District Court for the Southern District of New York could, for alleged connivance of the Casualty Company's agents in furnishing impostor substitutes for defendants in criminal cases, enter an order prohibiting and restraining the Casualty Company from acting as surety "in any and all matters" in the court named. It was held that no such general order could be entered. In Rowan v. Randolph, the sole question was whether or not it is within the discretion of a district judge to refuse to accept cash bail where a recognizance with surety is ordered. The decision was in the negative. This de-

cision became obsolete upon the later promulgation of Rule 46(d) of the Federal Rules of Criminal Procedure quoted above. In United States v. Davis, the sole question was whether a district court could, at the instance of the Government, order the clerk to pay out of a Treasury bond deposited as bail a fine imposed upon the defendant. The decision was in the negative. In United States v. Widen, the sole question presented was whether or not a stranger to the action could intervene in protection of an alleged property right in Liberty Bonds deposited as bail. The decision was in the negative.

3. See the Annotation on this subject in 72 A.L.R. 801–822.

consideration to such other factors as are above outlined, admitted Christoffel to bail upon the terms and conditions defined in the order of April 6, 1950. It is not now contended by the Government that the determination that a substantial question is involved in the case was in error. The decision of the court to admit Christoffel to bail having been duly reached and the conditions of bail having been duly considered and defined, the court cannot properly revoke the order or by modification add to the conditions defined therein except upon a showing of the existence of factors which may lessen the dependability of the appearance of Christoffel when required to appear. The Government has made no such showing. Expressly asked by the court whether the Government had any evidence that Christoffel is now less likely to appear, in view of the conditions of bail defined in the order of April 6, 1950, than at that time, counsel for the Government replied in the negative. Expressly asked if it could produce such evidence if given further time and opportunity, counsel for the Government replied that he did not know.

 The Government suggests that for the court not to have required in the second alternative of the bail order of April 6, 1950 a surety, in addition to cash bail and a bond of the defendant for his appearance, was an improvident error. That was not an error. Rule 46 provides that a person required or permitted to give bail shall himself execute a bond for his appearance, but it provides also that "One or more sureties *may* be required, cash or bonds or notes of the United States *may* be accepted and in proper cases no security need be required." (Italics supplied) There is no showing of improvidence in the action of the court. It is not unusual not to require a surety in addition to cash bail— especially where, for such an offense as perjury, the cash bail is as high as that fixed in the instant case. If the Government was dissatisfied with the form of the court's order of April 6, 1950, it had a duty to make its objections known to the court. It does not claim ever to have objected to the form of the order until the present time. In the absence of a showing that some more stringent order is now requisite, there is no reason for the court to modify its order.

 The Government urges that the indictment for perjury charged Christoffel with falsely denying that he is a Communist and that the evidence in the case demonstrates that the denial was false, i. e., that Christoffel is a Communist; and the Government asserts, although it offers no evidence to support the assertion, that Christoffel is an active participant in Communist party affairs. The Government urges that the fact that Christoffel is a Communist and is active in party affairs renders unlikely his appearance when required to appear. But the evidence on the subject of Christoffel's being a Communist was as fully before this court at the time it entered the order of April 6, 1950 as it is now. It can therefore no more be said now than then to prove that Christoffel's associations, activities or character are such as make unlikely his appearance before the court when ordered to appear. Moreover, even if it be assumed that Christoffel is a Communist and is actively engaged in Communist party affairs this, without more, is not a proper ground for denial of bail. The decision of a court must be without respect to persons and without respect to the political affiliations or activities of a party except as the same are shown to be relevant and material to an issue before the court. In the instant case the present primary issue is whether Christoffel will, under the conditions of bail defined in the order of April 6, 1950, make appearance before the court when required to do so. Only if it were shown that his associations and activities as a Communist, if he is a Communist, are now such as to lessen the dependability of his appearance before this court when ordered could the court properly consider such affiliations and activities in determining whether or not to revoke or modify its bail order. As said recently by Mr. Justice Jackson, writing as Circuit Justice for the Second Circuit, in Williamson v. United States, 1950, 184 F.2d 280, 283–284:

"My task would be simple if a judge were free to order persons imprisoned because he thinks their opinions are obnoxious, their motives evil and that free society would be bet-

tered by their absence. The plea of admitted Communist leaders for liberties and rights here, which they deny to all persons wherever they have seized power, is so hypocritical that it can fairly and dispassionately be judged only with effort.

"But the right of every American to equal treatment before the law is wrapped up in the same constitutional bundle with those of these Communists. If in anger or disgust with these defendants we throw out the bundle, we also cast aside protection for the liberties of more worthy critics who may be in opposition to the government of some future day."

Compare also United States v. Gordon, 8 Cir., 1951, 190 F.2d 16, and cases therein cited, wherein Chief Judge Gardner, speaking for the court, ruled: "It is now well established that mere Communist party membership does not justify detention without bail. United States ex rel. Potash v. District Director, etc., 2 Cir., 169 F.2d 747, 751; United States ex rel. Pirinsky v. Shaughnessy, 2 Cir., 177 F.2d 708; Williamson v. United States, 2 Cir., 184 F.2d 280."

In summary: The court decides, Judge Clark dissenting, that the District Court was without jurisdiction to revoke the bail bond furnished by Christoffel or to modify the order of this court, and that the District Court's order purporting so to revoke and modify is void. The court decides, without division, that the Civil Rights Congress is not a satisfactory surety and not a satisfactory source of bail, whether in cash or United States Treasury bonds or notes, and that accordingly the bail furnished in behalf of Christoffel must be disapproved. The court decides, Judge Clark dissenting, that its order of April 6, 1950, admitting Christoffel to bail upon conditions defined should not be revoked or modified. If new bail, satisfactorily complying with either of the alternatives provided in the order of April 6, 1950, is furnished, Christoffel may remain at large, otherwise he must surrender by the time fixed in an order to be entered this day.

Application for supplemental order continuing the appellant on the present bail denied.

Appellee's motion for an order cancelling the present bail granted.

Appellee's motion to revoke or modify the bail order of April 6, 1950, denied.

CLARK, Circuit Judge (dissenting).

I adopt as my views concerning bail the views of Judge Clark of the Second Circuit set forth in United States v. Field, 1951, 193 F.2d 92. Bail is to serve the convenience of the accused and to assure his appearance at an appointed time and place, and it should not be granted when there is even the slightest cause to doubt the appearance of the accused when required. Events of the recent past, of which this court is well aware and which serve to support the finding that the Civil Rights Congress is not a satisfactory surety and not a satisfactory source of cash or other bail, serve also to raise more than a slight doubt that bail will assure appearance of Christoffel when required. Therefore, I would deny the continued enlargement of Christoffel on bail.