In re WILLACY COUNTY WATER CONTROL & IMPROVEMENT DIST. NO. I.

No. 762.

District Court, S. D. Texas, Brownsville Division.

Dec. 19, 1940.

Jesse G. Foster, of Raymondville, Tex., for Coats and others for intervention.

John D. McCall and Millard Parkhurst, both of Dallas, Tex., and Roger F. Robinson, of Raymondville, Tex., opposed to both interventions.

C. M. Gaines, of San Antonio, Tex., and Davenport & Ransome, of Brownsville, Tex., for other creditors.

Seabury, Taylor & Wagner, of Brownsville, Tex., for Ousley and others for intervention.

ATWELL, District Judge.

On July 30th, 1940, the debtor filed its petition submitting a plan of composition. The plan relates to three groups of indebtedness; the first approximates four items of $1,480,524.29, $1,409,000 of which is a bond issue. Upon this group it proposes to pay thirty-five cents on the dollar.

The second group consists of $20,121.30 plus some judgments and pending litigation.

38

Thirty-five cents on the dollar is also to be paid upon this group.

The third group is not affected by the plan, but it comprises bonds voted in 1934 in the sum of $3,726,000, and held by the Reconstruction Finance Corporation for the WPA. The plan provides for the payment of these bonds after the plan for the first two groups goes through.

There is to be paid to the attorneys who pay all expenses, 2 per cent on the amount of indebtedness composed. This would be in excess of $30,000.

On the 30th day of July, 1940, the plan was approved as having been filed in good faith and in accordance with the requirement of the statute, and a formal hearing was set at Brownsville for October 18th. Between that date and October 18th, certain bondholders sought the right to transfer to the Reconstruction Finance Corporation their holdings upon the payment of thirty-five cents. These applications were granted. Other orders were also entered.

Coats, Schubert, and Haynes seek to intervene to attack the entire bond issues.

In the intervention which they ask to file, they pray an injunction restraining the petitioner from prosecuting tax suits which are already pending, and from filing additional tax suits. They also desire a judgment against all parties to this proceeding, cancelling all of the bonds of the district. Likewise, they seek restraint against bondholders asserting their rights under their bonds, and they desire to cancel tax levies, and remove tax-levy cloud from land titles. In addition to the restraint against pending tax suits, they wish them dismissed, and they wish further tax levies enjoined.

They claim that the district originally covered an hundred thousand acres; that the Commissioners optionally deleted seventy thousand acres, which left thirty thousand, in the Old Union irrigation district, and then added one hundred thousand acres without proper notices to the owners of those acres, and changed the name to Willacy County Water Control and Improvement District; that the healing act of the Legislature, thereafter, could not, and did not, remedy this illegality. They claim that their lands are situated in the one hundred thousand unauthorized acres, and that their acreage is not benefited by the irrigation, and that as much as fifty thousand of such acreage is not benefited.

They are citizens of Texas, as is also the petitioner.

Neither of them claims to be a creditor of the petitioner, nor to hold any of the bonds involved in the proceeding.

After the application to compose was filed, statutory orders and notices were entered and given, and the case assigned for hearing on October 18th, 1940. The motion to intervene was filed on November 20th, 1940, and the intervention on November 30th, 1940. Such pleading is used for the facts.

Their attempt to enter this court under the guise of an intervention for the destruction of all the bond issues, while appearing to be justified under Rule 24, rules of Civil Procedure, 28 U.S.C.A. following section 723c, which permits an intervention by one who is interested, etc., is extremely doubtful in a case of this sort. That rule gives a timely right which is subordinate to the original suit. The intervenor does not delay the issue.

Rule 24 treats of two sorts of interventions. One is a matter of right, and the other is permissive. The matter of right intervention grows out of the liberty that the party might be bound by a judgment in the action, and that the representation of his interests by existing parties might be inadequate; and, of course, in any case in which he is likely to be adversely affected by a disposition of property in the custody of the court. A permissive intervention comes out of judicial discretion whenever a federal statute gives a conditional right, or when an applicant's claim or defense and the main action have a question of law or fact in common. This rule cautions the court to consider whether the proposed intervention will unduly delay or prejudice the adjudication of the rights of the original parties. When the claim or defense of the applicant departs from the field of litigation of the original parties in such a manner as to complicate and delay its determination, leave should be denied. Holtzoff, 1940, pp. 67, 68; Tachna v. Insuranshares Corporation, D.C., 25 F. Supp. 541; United States v. Columbia Gas Co., D.C., 27 F.Supp. 116; Carpenter v. Wabash Ry. Co., 8 Cir., 103 F.2d 996.

There are certain state statutes which validate bond issues, and when the respective steps provided for by the statute are certified to by certain state officers, the public may buy such issues without fear of any question as to their validity.

The power of the court to inquire into indebtedness, which is given by the

Bankruptcy Act, 11 U.S.C.A. § 1 et seq., is not such a power as would support a suit against the petitioner by those who seek to intervene. The statute limits the order of the court, under the right to compose indebtedness, to the confirming of the composition, or to the rejecting of the composition and the dismissal of the proceeding. This is mandatory and the court has no further jurisdiction.

So, laying aside the question of timely filing, and the question of the right to hinder or delay the trial, there still remains a most serious obstacle to the intervention, in that it calls for the decision of a matter entirely foreign to this statute, and to this proceeding. It may be that a decision in favor of the sought intervention would be an impingement upon the sovereignty of the state. It will be recalled that the old municipal statute was held unconstitutional because of the violation of the state's rights. The present statute does not incorporate such broadness. The jurisdiction of the court is narrowed to the question of composition. All other matters are left to the control of the state which mothered the district. The present act has been held to be constitutional, and seems to be in line with Hoffman v. McClelland, 264 U.S. 552, 44 S.Ct. 407, 68 L. Ed. 845, which ruled that a national court which has not taken over the administration of a trust in a proceeding for its interpretation against a trustee appointed by a state court has not impounded the property so that it can entertain a bill by an attaching creditor to interfere for the protection of his judgment.

■ The Bankruptcy Act limits the power of the court to the composition of indebtedness and to the carrying on of the usual business transactions, which includes the making of necessary expenditures in connection therewith. Jurisdiction over the governmental affairs of the municipality, or of its property, is limited to such purposes. The court is merely authorized to determine insolvency, or inability to meet debts as they mature, and whether the plan proposed is in accordance with the provisions of the statute, and whether it has been accepted by the number of creditors provided, and whether the petitioner is in a position to carry out the terms of the plan, and whether it is equitable, for the best interests of the creditors, and nondiscriminatory. Those questions are the limit of jurisdiction, and upon their determination follows either confirmation or dismissal.

■ The questions raised by Coats et al. are wholly extraneous to compositions and are quite beside the power of bankruptcy. They raise issues concerning the creation of the district, the sale of bonds, and the making of a contract which would require extended litigation to determine. The statutes of the state limit the time for the making of such issue, and the person who may make such issue. The time for the making of such issue has long since passed and the authorized person is not now here seeking to make it.

The debtor, petitioner, acknowledges the validity of its obligations. It contends that it is unable to pay them in full, and it offers a settlement.

■ Under Section 403, chapter 9, 11 U.S.C.A., sub. f, the court is authorized to pass on all claims and to reject or allow claims of creditors which have not, as well as those who have, accepted the plan.

In Pepper v. Litton, 308 U.S. 295, 60 S. Ct. 238, 84 L.Ed. 281, the court states that, "in allowing and disallowing claims * * * determining controversies in relation thereto * * * the jurisdiction of the bankruptcy court is exclusive."

The assault here goes deeper than this highly ministerial and important power. It seeks to and does involve the very essence of the indebtedness liens. It makes no attack upon the fact that the creditors actually placed the money in the hands of the petitioner. It makes no attack upon the good faith of any of the creditors. It merely claims that the petitioner, in its holding of elections and in the formation of the district, acted illegally. Even if it did do so, several years have passed, and it has been forgiven by 91.8 per cent of the creditors, and only a portion of the remaining 8.2 per cent object to any part of the plan, while none of the creditors seek to intervene or to join in the unsettling of the entire autonomy that is programmed by Coats et al. Landowners may have had a right to contest, but not now, nor here.

Some of the questions that are sought to be raised appear to have been litigated in the state court in the case of Baugham v. Willacy County Water Control & Improvement District, Tex.Civ.App., as shown at 112 S.W.2d 318.

In that case, however, Baugham conceded that the district was legally constituted, and that the bonds were legal and validly authorized to be issued. The opinion does not disclose whether he made this concession, because of the statutes heretofore mentioned by the court as giving certain powers of approval and denying the private citizen the right to question their validity after statutory steps were taken. It is possible that his case rested entirely upon the proposition that the work that was in progress did not cover his lands, and probably never would. If that is the sole issue, then the case does not decide any of the questions presented in this case, except the contract feature.

The fact has already been mentioned that the statutes of Texas place considerable emphasis upon the approval of bonds by the Attorney General of the state. Article 7880—34, Vernon's 1936, R.S.Texas, provides that when the bonds are approved by the Attorney General and registered by the Comptroller, they "shall be held in any suit or proceeding in which their validity may be questioned to be valid, binding obligations of such district, provided, however, that any party interested therein may file a suit thereon at any time prior to the registration of same by the State Comptroller, but not thereafter." This article does not allow registration by the Comptroller until twenty days after the election authorizing their issuance.

Article 7880—25a, Vernon's 1936 R.S. Texas, provides that no person shall be permitted to institute any suit contesting the validity of the formation and boundaries of a district, or "contesting any bonds or other obligations created hereunder." It provides that such matters may be judicially inquired into in a suit brought by the state of Texas through the Attorney General, either upon his own motion, or upon the motion of any person affected.

See State ex rel. Abney et al. v. Miller, 133 Tex. 498, 128 S.W.2d 1134, as an example.

Even if there be illegalities that may be tested regardless of the validating statutes, such right would not surmount nor control the national statute which limits the questions to be passed on in this proceeding.

■■ The application to intervene must be overruled because too late, because it is not authorized under the Composition Act, 11 U.S.C.A. § 401 et seq., because it is pro-hibited by the state statutes, and because there appears to be no merit in the intervention.

■ This summary action on the application seems to be the justice of the situation, regardless of the fact that a Bankruptcy Court is a court of equity. Being a court of equity, those who seek the conscience must, themselves, be free of fault.

■ The equity of the case is satisfied by the thought that nothing that is done in these proceedings can injure the rights of Coats et al. If they have a right to attack in a proper suit, and in a proper way, the bonds that are held by the creditors in this proceeding, they may do so in a bill wherein those holders are made parties. What is done in this proceeding, neither validates nor unsettles that bonded indebtedness insofar as it would prejudice the rights of Coats et al. If they have no case, then the indebtedness against their properties is reduced by these proceedings. Intervention is the admission, by leave of the court, of a person not an original party, into the proceeding, by which such person becomes a party thereto for the protection of some right or interest alleged by him to be affected by the proceeding.

■ On December 16th, 1940, B. W. Ousley and seventeen others filed an intervention for themselves and all other landowners situated in what is called the "dry lands section" of the district. Many of the observations made in the Coats et al. intervention, supra, are applicable to this intervention. There is this very definite difference, however, Coats et al. appear to have no equity. They are not disturbed one way or the other. If they had a right, they still have it. The Ousley et al. intervention strikes at the attempt to destroy the very fund in which those men have placed reliance.

The testimony shows that upon the so-called fifty thousand acres dry land, taxes have been paid for eleven years for irrigation purposes, of $1 per acre, per year. Of this, about 75 per cent or 80 per cent has been paid, though some of it was not paid in cash. For this, approximately $500,000, the owners of those lands have received no benefit whatever.

They have looked forward to the coming of irrigation through the unissued $2,000,-000 in bonds, which this proceeding proposes to cancel. When the refunding was ac-

complished in October, 1933, an estimate of the cost to place water on these dry lands was considered in that movement, and the engineers estimated that that cost would be approximately $1,627,000, and that, therefore, the refunding of the other bonds, leaving untouched the $2,000,000 treasury bonds, not yet issued, would take care of that new improvement.

It will be recalled that when the election was originally held on January 14, 1929, the people voted to put water on all of this land. They later agreed that the PWA could refund, as just mentioned, and the fifty thousand acres would be taken care of out of the $2,000,000 bonds when they were issued and sold.

■ The writing off by the government of $2,389,000—a voluntary loss—does not and cannot erase the discrimination that would result against the owners of these fifty thousand acres if the $2,000,000 unissued bonds were cancelled. Nor, could such erasure result from the agreement of all other creditors to accept thirty-five cents on the dollar. Those unissued bonds are a trust fund and must be reckoned with in any plan that is proposed by the present district.

A decrease in the water tax in favor of those lands, as against a similar tax against the lands in the districts which have water, is appropriate, but is no argument upon which to base this attempted discrimination.

It will be noticed that the present plan provides for the issuance of no more bonds for the district, and also indirectly recognizes the justice of the court's position, when it proposes that there shall be "requirements" for the exclusion from the irrigated district of "dry lands."

The plan specifically provides that there is no obligation upon the part of the government to make the promised advance of $516,000 until and unless its stipulations are complied with.

In the recent case of Mission Independent School District v. State of Texas et al., 116 F.2d 175, decided on December 18th, 1940, by the Circuit Court of Appeals for this circuit, there is a résumé of the statutory requirements which must be found by the court:

■ The plan must be fair and equitable, and for the best interests of the creditors affected, and not discriminating unfairly in favor of any; (b) and within the legal powers of the district to carry out.

Even though Ousley and his co-plaintiffs had not intervened, it would have been the duty of the court, sua sponte, to have refused approval because of discrimination in the respect indicated.

Orders may be accordingly drawn.