NATURAL GAS PIPELINE CO. OF AMERI-
CA et al. v. FEDERAL POWER COM-
MISSION et al.

No. 7454.

Circuit Court of Appeals, Seventh Circuit.

May 22, 1942.

482

George I. Haight, of Chicago, Ill., for Natural Gas Pipeline Co. and Texoma.

Kenneth F. Burgess and Francis L. Daly, both of Chicago, Ill., for Chicago District Pipe Line Co. and Peoples Gas, Light & Coke Co.

Harry J. Dunbaugh, of Chicago, Ill., for Public Service Co. of Northern Ill., and Ill. Northern Utilities Co.

Benjamin Alschuler, of Aurora, Ill., for Western United Gas & Electric Co.

Albert E. Hallett, Jr., of Chicago, Ill., for Illinois Commerce Commission.

George Slaff, of Washington, D. C., for Federal Power Commission.

Floyd E. Thompson, of Chicago, Ill., for Consumers (in a class suit).

S. A. L. Morgan, of Amarillo, Tex., for Texoma Natural Gas Co.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

The original petitioners seek further exercise of the jurisdiction of this court in determination and distribution of the amounts payable by them, pursuant to and by virtue of the terms of the stay order entered and the bonds filed in the original proceeding and in restraint of suits in other forums.

On August 30, 1940, this court restrained temporarily, enforcement of the Federal Power Commission's rate order of July 23, 1940, upon condition that petitioners file a bond in the sum of $1,000,000, conditioned as provided in the order. In November following, the court, under Section 19(c) of the Natural Gas Act, 15 U.S.C.A. § 717r(c) entered an order staying the rate, dissolving the earlier temporary restraining order, and requiring, as a condition of the stay, a bond for $1,000,-000, in favor of the Federal Power Commission and the Illinois Commerce Commission conditioned for payment of the amounts representing the reduction in gross revenues of petitioners which might accrue pending review of the order of the Commission directing petitioners to file new schedules of rates and changes effectuating reduction of not less than $3,-750,000 per annum in the operating revenue of petitioners. At that time petitioners represented to the court that they were amply solvent and could and would respond to any final judgment against them.

This court, upon final hearing, set aside the order of the Commission, 7 Cir., 120 F.2d 625. Subsequently the Supreme Court reversed that judgment, 62 S.Ct. 736, 86 L.Ed. ——. Since then, petitioners have filed with the Commission new rate schedules in conformity with the latter's original order which, by virtue of the decision of the Supreme Court, became effective as of the date of its entry. Petitioners have filed also copies of the schedules disclosing the amounts representing the reduction in rates which would have been made to their customers had the stay not been entered and had the scheduled rates been effective from the date of original order of the Commission July 23, 1940.

In their present petition, petitioners set forth the foregoing facts and aver that they are ready, able and willing to refund such amounts as we may deem properly payable as a result of the erroneous entry of the stay. They aver that this court has "exclusive jurisdiction, authority and obligation to regulate, control and direct the disposition of any funds payable because of the order staying the order of the Power Commission"; that, notwithstanding such sole jurisdiction, they have been sued both in the state and federal courts by ultimate consumers of the gas distributed and that unless we retain jurisdiction, they will be subjected to numerous similar suits. They pray that the court reserve jurisdiction to determine all amounts payable by them under the terms of the bonds filed or as a result of the stay order, to the persons entitled to receive such payments, and the amount due each and that all persons claiming any right to such payments be enjoined from asserting their demands in any court other than this.

The Illinois Commerce Commission in its answer avers that the gas distributed passed eventually to ultimate consumers, approximately one million in number; that the rates charged by the distributing companies to their customers are fixed by the Illinois Commerce Commission largely upon and necessarily reflect the prices paid by the distributing companies to petitioners or their affiliate, the Chicago District Pipe Line Company; that the money represented by the excess charges was collected from the comsumers and, eventually and inevitably, is equitably due them; that this court has exclusive original jurisdiction of the determination of legality of the Federal Commission's order and the consequent exclusive ancillary jurisdiction of distribution of all such money as has accrued because of the stay in favor of the persons ultimately and equitably entitled thereto, and that all persons claiming any interest in such funds should be permitted and directed to come into the ancillary proceedings. It prays that the court retain jurisdiction for the purpose of making distribution, grant leave to the respondent to file proper pleading and restrain prosecution of all other actions.

The distributing companies, who purchase gas from petitioners and the latters' affiliate and who sell gas to the public, agree that the refund should eventually, equitably and ultimately be made to the consumers who purchased from them. They contend that this court had exclusive jurisdiction of the original proceedings and has equally exclusive jurisdiction of the necessary ancillary proceedings to control, provide for and direct distribution of the refunds. Indeed the positions of petitioners, the Federal Power Commission, the Illinois Commerce Commission and the distributing companies are in substantial accord.

Marshall Joyce and others, claiming to be consumers, file a pleading which we shall designate a cross-petition. They neither admit nor deny the jurisdiction of this court but aver that our authority, if any, is of such character that we are under no compulsion to exercise it and that whether we should do so should be determined by our sound discretion "on the basis of the balance of convenience to both the court and parties and the comparative adequacy of remedy and relief available both on trial and on appeal." They have filed in the District Court a class suit in behalf of themselves and all other customers seeking recovery of excess charges, determination of the respective amounts due customers, distribution thereof, and restraint against all parties from proceeding in other courts. They have filed a similar action in the state court. They aver in each of their complaints that the excess charges constitute "a trust fund for the use and benefit of the gas consumers" and "money had and received to the use of the consumers" and insist that said sums shall be paid only to such persons.

Thus all parties before the court agree that the excess charges when distributed should in equity be refunded to the ultimate consumers. The question immediately confronting us is whether this court has jurisdiction and if so whether we should or must retain it and restrain other litigation or, whether our power to act is discretionary and the parties should be remanded to relief in other forums.

The source and boundaries of our authority must be found in the Natural Gas Act, 15 U.S.C.A. § 717r(b) (c), providing that persons aggrieved by an order of the Commission may obtain a review in the proper Circuit Court of Appeals, which shall have exclusive jurisdiction to affirm, modify or set aside the order in whole or in part, and the judgment of which shall be final, subject only to review

by the Supreme Court. Proceeding for review does not, unless so specifically ordered by the court, operate as a stay of the Commission's order. Thus the Circuit Court of Appeals is the first forum in which a judicial hearing can be had to determine the legality of the order. In this respect the legislation is similar in its terms and purport to that governing orders of the Federal Trade Commission, the National Labor Relations Board and various other administrative bodies. We have previously said in Century Metalcraft Corporation v. Federal Trade Commission, 7 Cir., 112 F.2d 443, that, under the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq., Congress has made a grant of original jurisdiction to the court to enforce, set aside or modify the Commission's order and that such power carries with it authority to vacate or modify our own judgment whenever good cause is shown. This is in accord with announcements of other jurisdictions. We think it well settled that in respect to review of orders of Federal Boards and Commissions, the jurisdiction of the Circuit Court of Appeals, when granted by Congress, is original rather than appellate in character and that, being endowed with original jurisdiction, the court may by its own orders protect the rights of the parties in any manner in which any trial court of equity of general jurisdiction might do so in an injunction suit. Butterick Co. v. Federal Trade Commission, 2 Cir., 4 F.2d 910; Silver Co. v. Federal Trade Commission, 6 Cir., 292 F. 752; Chamber of Commerce v. Federal Trade Commission, 8 Cir., 13 F.2d 673; Federal Trade Commission v. Balme, 2 Cir., 23 F.2d 615, certiorari denied 277 U.S. 598, 48 S.Ct. 560, 72 L.Ed. 1007; Indiana Quartered Oak Co. v. Federal Trade Commission, 2 Cir., 58 F.2d 182.

We are accustomed to thinking of the District Court as the only federal judicial tribunal of original jurisdiction, but we know of no constitutional prohibition against a grant by the Congress of original jurisdiction to the Circuit Court of Appeals. We are not concerned with the reason why Congress has in some instances vested in the District Court original jurisdiction to review orders of administrative bodies and why in others it has lodged such power in the Court of Appeals. The essential fact is that it has seen fit so to do. The rank of the court is not important.

Federal Trade Comm. v. Balme, 2 Cir., 23 F.2d 615.

Having original jurisdiction, what is the nature of and the true limitation upon that jurisdiction? Is its exercise discretionary upon the part of this court or are we confronted with a duty? In considering this, we should remember the distinction between ancillary or incidental jurisdiction and that which is original. Where a court has jurisdiction of a cause of action and the parties, it has jurisdiction also of supplemental proceedings which are a continuation of or incidental to and ancillary to the former suit even though the court as a federal tribunal might not have had jurisdiction of the parties involved in the ancillary proceeding if it were an original action. In other words, inasmuch as such jurisdiction is ancillary, a federal court is not precluded from exercising it over persons not parties to the judgment sought to be enforced. 25 C.J. 696 and 697; 21 C.J.S., Courts, § 88, page 136.

In Labette County Commissioners v. Moulton, 112 U.S. 217, 5 S.Ct. 108, 110, 28 L.Ed. 698 the court had entered judgment against a township upon bonds issued by the county commissioners in behalf of the township. Subsequently plaintiff sought a writ of mandamus to compel the commissioners to assess and collect a tax to satisfy the judgment. It was contended that the court, if it should act upon such a petition, would be exercising original jurisdiction and, under the particular facts, without jurisdiction. But the Supreme Court declined to accept this reasoning, saying: "It is quite true, as it is familiar, that there is no original jurisdiction in the circuit courts in mandamus, and that the writ issues out of them only in aid of a jurisdiction previously acquired, and is justified in such cases as the present as the only means of executing their judgments. But it does not follow because the jurisdiction in mandamus is ancillary merely that it cannot be exercised over persons not parties to the judgment sought to be enforced. An illustration to the contrary is found in that class of cases of which Krippendorf v. Hyde, 110 U.S. 276, 4 S.Ct. 27 [28 L.Ed. 145], is an example."

Where in the progress of a suit in the United States Court, property has been drawn into custody and control, third

persons claiming interest in or liens upon the property may be permitted to come into court to protect and enforce their claims, even though the court could not have considered or adjudicated their claims if it had not originally impounded the property. Hoffman v. McClelland, 264 U.S. 552, 44 S.Ct. 407, 68 L.Ed. 845. There the court said at page 558 of 264 U.S., at page 409 of 44 S.Ct., 68 L.Ed. 845: "Power to deal with such claims is incident to the jurisdiction acquired in the suit wherein the impounding occurs, and may be invoked by a petition to intervene pro interesse suo or by a dependent bill. But in either case the proceeding is purely ancillary. [State of] Oklahoma v. [State of] Texas, 258 U.S. 574, 581, 42 S.Ct. 406, 66 L.Ed. 771; Minnesota Co. v. St. Paul Co., 2 Wall. 609, 632, 17 L.Ed. 886; Krippendorf v. Hyde, 110 U.S. 276, 281, 4 S.Ct. 27, 28 L.Ed. 145; Compton v. Jesup, [6 Cir.], 68 F. 263, 279; Sioux City Co. v. Trust Co., [8 Cir.], 82 F. 124, 128; Minot v. Mastin, [8 Cir.], 95 F. 734, 739; Street Fed.Eq.Pr. pp. 1229, 1245–1247, 1364."

In a later case, Central Union Trust Company v. Anderson County, 268 U.S. 93, 45 S.Ct. 427, 429, 69 L.Ed. 862, the Supreme Court said: "Ancillary suits are not limited to those initiated by persons who desire to come in and have their rights determined. Such a suit may be maintained by the plaintiff in the principal suit against strangers to the record to determine a controversy having relation to the property in the custody of the court and which, in justice to the parties before the court, ought to be determined in the principal suit." Similar expressions are found in Gunter v. Atlantic Coast Line, 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477; Blair v. City of Chicago, 201 U.S. 400, 26 S.Ct. 427, 50 L.Ed. 801; Wabash Railroad v. Adelbert College, 208 U.S. 38, 28 S.Ct. 182, 52 L.Ed. 379.

■ This ancillary power to do complete justice as to all the parties' interests in a fund grows out of equity jurisdiction. When invoked we can conceive of no method by which it properly may be evaded. Thus the Supreme Court, discussing the jurisdiction of a statutory district court of three judges which had enjoined an order of the Interstate Commerce Commission, referring to the duty of the court to protect the impounded fund and direct its disposition, in Inland Steel Co. v. United States, 306 U.S. 153, 59 S.Ct. 415, 417, 83 L.Ed. 557, said: "It is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all—including the public—whose interests the injunction may affect. * * * When the Court finally determined that the administrative findings and order were correct, appellant could claim an interest in the fund only by asserting a right to payments forbidden by law, and it became the duty of the Court promptly to allocate the fund to its lawful owner." Similarly where the court had suspended the action of the Secretary of Agriculture and a fund had accumulated, in United States v. Morgan, 307 U.S. 183, 59 S.Ct. 795, 800, 83 L.Ed. 1211, the court said: "The district court sits as a court of equity, see Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221; Inland Steel Co. v. United States, 306 U.S. 153, 59 S.Ct. 415, 83 L.Ed. 557; and in exerting its extraordinary powers to stay execution of a rate order, and in directing payment into court of so much of the rate as has been found administratively to be excessive, it assumes the duty of making disposition of the fund in conformity to equitable principles."

Here the fund has accumulated. Those charged with the duty of accounting for it, are ready and willing and offer to deposit it with the court. The fact that it is not yet physically in court does not alter the situation or affect the jurisdiction of the court, for this fund came into existence as a result of this court's stay order entered in the original proceeding. Two bonds were required to be filed, conditioned for the payment of the money, a requirement made to protect the interests of all those whom our injunction affected. To all intents and purposes this involves the same jurisdiction as that over disposition of a fund actually in court; the jurisdiction of the court and its obligation and duty to act are the same. So in Ex parte Lincoln Gas & Electric Co., 256 U.S. 512, 41 S.Ct. 558, 560, 65 L.Ed. 1066, a bond had been filed. The city and its officials were representatives of the consumers who were the parties eventually concerned and the bond was conditioned for payment of the excess rate, in case it should be established that the enjoined rate was proper. The court, discussing the bond and the duty of the court with reference thereto, said:

"And it recognized that to ascertain what should be due to them, to see to its collection from the company in case of its failure to make good its attack upon the ordinance, and to cause distribution to be made among the several claimants, was essential to the doing of complete equity, and therefore a natural incident to the jurisdiction of the court in the main cause. To retain jurisdiction for the purpose of requiring that restitution be made according to the terms of the bond was and is a necessary part of the duty of the District Court under the mandate. * * * The contention that the jurisdiction fails because the consumers were not parties to the record, nor in privity with the parties, and the company prayed no relief against them, is transparently unsound. The ordinance was intended to limit the gas rate for the benefit of the consumers; suit was brought against the municipality and its officers as the public representatives of the interests of the consumers; the restraining order and temporary injunction were intended for the very purpose of enabling the company to exact, pending the suit, rates in excess of those limited by the ordinance; the equitable duty to refund excess charges if the suit should fail was a duty owing to the consumers; and the form of the supersedeas bond recognized all this, and was particularly designed for their protection." See also Arkadelphia Milling Co. v. St. Louis Southwestern Ry. Co., 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517; In re City of Louisville, 231 U.S. 639, 34 S. Ct. 255, 58 L.Ed. 413.

In Ford Motor Company v. National Labor Relations Board, 305 U.S. 364, 59 S.Ct. 301, 307, 83 L.Ed. 221, the Supreme Court said: "The jurisdiction to review the orders of the Labor Relations Board is vested in a court with equity powers, and while the court must act within the bounds of the statute and without intruding upon the administrative province, it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action. The purpose of the judicial review is consonant with that of the administrative proceeding itself,—to secure a just result with a minimum of technical requirements."

Thus we find the Supreme Court defining the court's obligation in cases similar to this as the duty of a court of equity to exercise jurisdiction to enforce restitution, and so far as possible, to correct what has been wrongfully done. Baltimore & O. R. R. Co. v. United States et al., 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954. More than one maxim of equity is applicable. Equity abhors circuity and multiplicity of actions. A court of equity taking jurisdiction for one purpose, will do complete equity between all interested persons. Such an obligation, imposed upon us as a court of original jurisdiction, can not, we think, with propriety, be avoided. Nor can we evade action by recourse to the suggestion that it is without our discretion to decline to act. The performance of duty is not discretionary; it is obligatory, mandatory.

Section 22 of the Natural Gas Act, 15 U.S.C.A. § 717u affords, it seems to us, the only basis of argument, which causes us to pause. By this Section, the District Court is given "exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder. * * *" It is also given jurisdiction of suits or actions to enforce any liability or duty "created by, or to enjoin any violation of, this chapter or any rule, regulation, * * *."

The query arises, did Congress, by this section, vest the District Court with jurisdiction to direct the refund of rates which the Commission, or this court, on review, has declared to be excessive.

We have two sections conferring jurisdiction upon the Federal court, included in the Act. The one, just referred to, gives certain jurisdiction to the District Court. It is general and quite inclusive; it does not deal specifically with the return of excessive rates.

Another section deals specifically with the subject of rates and charges. It makes the Commission the rate determining, rate regulating body. That body is given express power to determine what is a just and reasonable rate, and to fix the same by order. The gas company, however, is given authority to appeal from the Commission's holding to the United States Circuit Court of Appeals, which is given exclusive jurisdiction to affirm, modify, or set aside, the order, in whole, or in part. Provision is made for a hearing before that court, and it is provided that if the finding of the Commission be supported by substantial evidence, it shall be conclusive.

In other words, we find here provision for separate, exclusive jurisdictions of the

District Court and of the Circuit Court of Appeals. In each instance, it should be noted that the jurisdiction conferred is exclusive. The scope of the exclusive jurisdiction of the Circuit Court of Appeals is specific and covers appeals, which includes rate cases.

■ The rule of construction, generalia specialibus non derogant at once suggests itself. If the Circuit Court of Appeals has exclusive jurisdiction in the rate case and has power to affirm, modify, or reverse, the conclusion seems unavoidable that it necessarily also has not only the power, but the duty, to make interim staying orders, etc., require bonds, and perform the necessary acts to effectuate the orders made as a part of its jurisdiction.

■ We have, in the exercise of our conferred power, caused a fund to accumulate, and as a court of equity, are charged with the duty of doing complete justice. We find nothing in the Act indicating an intent upon the part of Congress to relieve us of the responsibility it has seen fit to impose upon us.

It follows that responsibility for proper disposition of all excess charges is, under the original jurisdiction of this court and its ancillary powers as a court of equity, mandatory upon us; it is placed upon us and upon us alone. We deem it our duty to retain jurisdiction and, as a court of equity, to determine to whom and in what amounts the distribution shall be made. It follows that all parties should be restrained from proceeding in other courts.

Since the conference in which the court and the interested parties participated and at which the Illinois Commerce Commission presented, through the Attorney-General of Illinois, its formal appearance and brief in support of our exclusive jurisdiction to act in the premises, we have received from the Commission, by its Chairman, a letter suggesting that authority to superintend and complete restitution is lodged in the Commission. However, in view of the absence of express provision of the Illinois Statutes to such effect and of machinery in the Commission to accomplish such refunding, and in further view of our conclusions as to the nature of our jurisdiction, we are not persuaded that the suggestion is legally correct or that it is of such practical effect as to justify us in shifting our duty and responsibility to the Commission.

All questions as to intervention shall be reserved for further action by this court. Likewise all other questions arising out of the petitioners' request of this court that it retain jurisdiction are reserved for further study and order. We are at this time meeting and determining the question of our jurisdiction upon the affirmative determination of which our future action is dependent. Counsel for petitioners will present an order enjoining all parties from proceeding in any other jurisdiction.