In the Matter of **FEDERAL FACILITIES REALTY TRUST, etc., Debtor,**

and

**National Realty Trust, etc., Debtor.**

**Paul E. DARROW, etc., Appellant,**

v.

**Jacob KULP and Myrtle Johnson, etc., Appellees.**

**Nos. 11273, 11274.**

United States Court of Appeals, Seventh Circuit.

March 15, 1955.

Rehearing Denied April 6, 1955.

---

---

Urban A. Lavery, Francis Heisler, Pearl Baer, Chicago, Ill., for appellant.

Walter William Pearson, Livingston E. Osborne, Walter P. Murphy, Gerard R. Scheib, Chicago, Ill., for Jacob Kulp and Edythe J. Johnson, as Administrator of the Estate of Myrtle Johnson, Deceased, appellees.

Before DUFFY, Chief Judge and MAJOR and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Darrow, an undischarged trustee of both debtors, Federal Facilities Realty Trust and National Realty Trust, hereafter referred to as Federal and National, appeals from an order of the District Court, sitting in bankruptcy in reorganization of the debtors, denying him the right to present a petition to have the court subject a part of an amount heretofore ordered paid to Kulp and Johnson, employees of Darrow while he was active as trustee, to his claim to some forty-three thousand dollars and expenses incurred.

In his petition Darrow recited that he had been appointed trustee of both estates in 1935, and had served as such until August 10, 1943, when a successor trustee was appointed; that he has never been discharged and that his final trustee's account is still pending before the court. Among other facts, as he averred, are the following: Jacob Kulp and Myrtle Johnson were employed by him as fiduciary employees and agents from 1935 until the cessation of his active duties in 1943. Myrtle Johnson has died and has been succeeded in the proceedings by her Administrator, Edythe Johnson. Her estate is insolvent. Subsequent to Darrow's resignation, in the course of administration, certain surcharge demands were made against him on account of the acts of his two employees, with the result that the District Court ordered him to repay to the estate some forty-three thousand dollars. Upon appeal this Court reversed, 184 F.2d 1. However, the Supreme Court, in Mosser v. Darrow, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927, reinstated the judgment of the District Court. Neither this court nor the Supreme Court found that Darrow had been guilty of any acts on his own part resulting in the loss to the two estates represented by the surcharge, or that he had profited in any way from the wrongful acts of his employees. After reinstatement of the judgment, Darrow paid the forty-three thousand dollars. This amount, according to his petition, thereby became due him from his employees because they had wrongfully diverted funds from the estates to themselves to that extent, for which he had been charged simply because he was responsible for the actions of his employees. Inasmuch as the Court had entered an order allowing Kulp and Johnson some $101,500 in cash and $150,000 in securities as a balance due them, Darrow sought by his petition to reach $43,000 of this fund, plus his expenses, on the theory that, inasmuch as he had been compelled to pay because of the wrongful acts of his employees, he should be allocated those sums from the funds ordered paid Kulp and Johnson. His contention, as set forth in his petition, was that, in equity, the rights of Kulp and Johnson in the sum of money to be paid to them should be subordinated to his claim. This relief, he claimed, he was entitled to as an equitable lien or garnishment of the funds in the estates or-

dered paid to Kulp and Johnson before they reached his faithless employees. This was, in essence, the substance of Darrow's claim.

One referee held that Darrow had the right to be heard. The District Judge reversed this order and re-referred the petition to another referee as Special Master, who thought it was "pure nonsense." The latter's recommendation that petitioner be denied the right to be heard was approved by the court. This appeal followed. Later in the proceedings, after the appeal had been taken, a supersedeas was allowed by one Judge and, later, denied by another. Darrow has appealed likewise from this order. The two appeals are now before us for disposition.

In the meantime the reorganization proceeding remains in status quo in the District Court. The plan has been confirmed, but there has been no final decree on its consummation as contemplated by Sec. 228 of the Bankruptcy Act, Title 11 U.S.C.A. § 628. Among the matters yet to be considered on final decree under that section are the discharge of the trustee "if any", making such provisions by way of injunction or otherwise, as may be equitable, and closing the estate. It is at this stage of the proceeding, before final decree, that we are asked to reverse the order denying Darrow's petition.

It is essential at the beginning that we establish Darrow's status. As related, he was reorganization trustee for both estates for a number of years. As such, of course, he was a party in interest in the administration of the estate, at all times subject to the court's orders. Later he was relieved of his active duties and a successor was appointed. However, he was not discharged but was compelled under the law, in due course, to file his final account. This has been filed and is still pending. At no time has there been any order divorcing him as a party in interest from the proceeding. He is still subject to the court's orders; his account may be approved; it may be disapproved. He is subject to further surcharges, if the evidence jus-

tifies their allowance. In other words, his right to be heard as an interested party in the administration of the estate, is still in existence and will be until the court shall have entered its final decree discharging him as provided by the Act. We think, upon these simple facts, that it cannot be said that he is not a party in interest and as such entitled to be heard on all matters relating to his accounting and as to his rights against the funds in the court's custody. Without regard to the reasoning of counsel on either side, it is our conclusion that until Darrow's account shall have been approved and he shall have been discharged, he is subject to the court's jurisdiction and is a party in interest who has a right to be heard upon anything affecting the *res* of the estates. It follows, in our opinion, that it was unnecessary for him to present a petition to intervene. As a party in interest he had a right to be heard without intervention. However, it is of no decisive importance, in our opinion, whether he was bound to file a petition for leave to intervene or whether he could have been heard upon his petition as a party in interest. The result, in either case, is the same, if he has shown a right to the relief prayed.

Before attempting to dispose of the appeals on their merits, it may be well to trace briefly the history of jurisdiction in bankruptcy. Among the express grants to the court by Section 2 of the last previous Act were: to allow, disallow and reconsider claims, reduce the estate to money and distribute it, and to "determine controversies in relation thereto." The Act further provided that nothing expressed in the jurisdictional section should be construed to deprive a court of bankruptcy of the power it would possess, were certain specific powers not therein enumerated. 11 U.S.C.A. § 11. These powers were retained and amplified in the present Act, 11 U.S.C.A. § 11, as well as in reorganization Section 77B, 11 U.S.C.A. § 207. In all reorganization proceedings the jurisdiction of the court, both prior to and after the approval of the petition, is the same as in

a bankruptcy proceeding upon adjudication, 11 U.S.C.A. §§ 512 and 514.

■ The word "claims" includes all demands of whatsoever character against the debtor or its property, whether secured or unsecured, liquidated, unliquidated, fixed or contingent. "Debts" include all claims, and "creditors" include the holders of any and all claims. 11 U.S.C.A. § 506. Consequently, any claim which is recoverable either in law or equity is provable in bankruptcy. In re Jordan, D.C., 2 F. 319.

■ The jurisdiction, within the scope of statutory authority, is paramount, exclusive, complete and unlimited. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281; Edelstein v. U. S., 8 Cir., 149 F. 636, 9 L.R.A.,N.S., 236, certiorari denied 205 U.S. 543, 27 S.Ct. 791, 51 L.Ed. 922; Beneficial Loan Co. v. Noble, 10 Cir., 129 F.2d 425. It includes the power to divide assets equitably among creditors and to determine controversies in relation thereto. Gochenour v. George & Francis Ball Foundation, D.C., 35 F.Supp. 508, affirmed, 7 Cir., 117 F.2d 259, certiorari denied 313 U.S. 566, 61 S.Ct. 942, 85 L.Ed. 1526; Story & Clark Piano Co. v. Holmes, 7 Cir., 251 F. 565.

■ In In re Chicago Railways Co., 7 Cir., 175 F.2d 282, certiorari denied People of State of Illinois v. Sullivan, 338 U.S. 850, 70 S.Ct. 94, 94 L.Ed. 521, we reiterated the truism that the court has power to dispose of all questions as to property in its custody, and to decide all controversies with regard thereto; and, in doing so, is endowed as a court of equity with full power to dispose of all issues raised in the course of the proceeding. This paramount and unlimited jurisdiction includes the allowance, rejection and reconsideration of claims, the reduction of the estate to money and its distribution, the determination of preferences and priorities to be accorded to claims presented for allowance and payment thereof in regular course, all controversies relating thereto, and the supervision and control of trustees and others who are employed to assist them. United States Fidelity & Guaranty Co. v. Bray, 225 U.S. 205, 32 S.Ct. 620, 56 L.Ed. 1055. See also U. S. v. Wood, 2 Cir., 290 F. 109, affirmed 263 U.S. 680, 44 S.Ct. 134, 68 L.Ed. 503; In re Missouri Gas & Electric Service Company, D.C., 11 F.Supp. 434. Furthermore, by express provision, the jurisdiction in reorganization includes all that a court of the United States would have had, if it had appointed a receiver in equity. Title 11 U.S.C.A. § 515.

In Pepper v. Litton, 308 U.S. 295, at pages 304–305, 60 S.Ct. 238, at page 244, 84 L.Ed. 281, the Court said: "By virtue of § 2 a bankruptcy court is a court of equity at least in the sense that in the exercise of the jurisdiction conferred upon it by the act, it applies the principles and rules of equity jurisprudence. * * * The bankruptcy courts have exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done. By reason of the express provisions of § 2 these equitable powers are to be exercised on the allowance of claims, a conclusion which is fortified by § 57, sub. k, 11 U.S.C.A. § 93, sub. k. For certainly if, as provided in the latter section, a claim which has been allowed may be later 'rejected in whole or in part, according to the equities of the case,' disallowance or subordination in light of equitable consideration may originally be made." "A bankruptcy court is a court of equity, § 2, 11 U.S.C. § 11, 11 U.S.C.A. § 11, and is guided by equitable doctrines and principles except in so far as they are inconsistent with the Act", Securities and Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, at page 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293, citing Bardes v. Hawarden First Nat. Bank, 178 U.S. 524, 534, 535, 20 S.Ct. 1000, 44 L.Ed. 1175; Continental Illinois Nat. Bank &

Trust Co. v. Chicago, R. I. & P. Ry. Co., 294 U.S. 648, 675, 55 S.Ct. 595, 79 L.Ed. 1110; Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557; Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281.

■ Applying the principles enunciated, it seems to us beyond question, that Darrow had a right to have his day in court. He appealed to a court of equity, acting within the jurisdiction granted by Act of Congress, to make him whole for the fault of his employees as a trustee of the estate, out of the funds still in the hands of the court, before they were paid over to those employees. He was not a stranger to the proceeding; he was one who had been entrusted with the duties of a trustee in reorganization and who had been succeeded by a successor, but whose liability to the estate or the estate's liability to him had not been adjudicated. His accounting with the estate remains to be completed. Before it is completed and while he is still under obligation to account, and the court under obligation to him to establish a fair accounting, he has asked a court of equity that it reimburse him for $43,000 and expenses which he has been compelled to pay, not because of his own dishonesty, but solely because of the faithlessness and misdoing of his employees. This reimbursement he seeks out of funds in the estates, about to be paid to those who caused his loss as trustee. Obviously, on his averments, he is entitled to be made whole, if possible, and, equally obviously, the court having jurisdiction of the employees, the trustee and the funds has a right to do equity in and about the same. We think his petition was clearly within the jurisdiction of the District Court and that he should have had a hearing upon the merits.

It is urged that he is protected by a right of action against the two employees in some other court, but we know of no rule that would relegate him to the expense and delay of another suit when the court has jurisdiction of the parties and the subject matter. Furthermore, it is obvious from his averments, at least one of the employees has died and her estate is insolvent. Consequently, any judgment obtained in any other court would be of no avail. Rather than relegating him to other tardy, expensive and uncertain remedies, we think the court should have ruled that he had a right as a party in interest to assert his equities against the funds of which the court has jurisdiction, in order to reimburse him for the sums he has been compelled to expend because of the fault of those to whom it is contemplated the funds will be paid. This is equity and this only is equity.

Though, under our ruling, we deem it unnecessary to reach the question of intervention, we take the precaution to discuss and apply that doctrine. Before the Federal Rules of Civil Procedure, 28 U.S. C.A., were adopted, intervention was defined in Equity Rule 37, 28 U.S.C.A.Appendix, thus: "Any one claiming an interest in the litigation may at any time be permitted to assert his right by intervention, * * *." This was quite generally recognized as declaratory of former equity practice. At the present time Rule 24 of the Federal Rules of Civil Procedure controls intervention generally, but inasmuch, as it largely restates the federal practice, cases prior to its adoption are pertinent on the question of the right to intervene. Thus, under provision (3) of Rule 24(a), 28 U.S.C.A., anyone shall be permitted to intervene in an action "when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody * * * of the court or an officer thereof." This is intervention of right.

"Where in the progress of a suit * * * property has been drawn into custody and control, third persons claiming interest in or liens upon [it] may be permitted to come into court to protect and enforce their claims." Natural Gas Pipeline Co. v. Federal Power Commission, 7 Cir., 128 F.2d 481, 484; Vicksburg, S. & P. Ry. Co. v. Schaff, 5 Cir., 5 F.2d 610; Western Union Tel. Co. v. United States & Mexican Trust Co., 8

Cir., 221 F. 545; Forest Oil Co. v. Crawford, 3 Cir., 101 F. 849. Thus, it has been said "even though the court could not have considered or adjudicated their claims if it had not originally impounded the property, subdivision (3) of Rule 24 (a) permits intervention of right when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof." Cyclopedia of Federal Procedure (2nd Ed.), Vol. 6, p. 489; Natural Gas Pipeline Co. of America v. Federal Power Commission, 7 Cir., 128 F.2d 481; Continental Casualty Co. v. Kelly, 70 App. D.C. 320, 106 F.2d 841; In re Willacy County Water Control & Improvement Dist., D.C., 36 F.Supp. 36.

"Intervention may be had under proper conditions, in reorganization proceedings." Cyclopedia, supra at page 521; Seaboard Terminals Corp. v. Western Maryland Ry. Co., 4 Cir., 108 F.2d 911. Though former section 77B, under which this proceeding was instituted did not enlarge the right to intervene, in practice the courts liberally allowed intervention in proceedings thereunder without discussion. See Cyclopedia of Federal Procedure, supra at page 522, and cases there cited. Under Title 11, § 607, U.S.C.A., the District Court may, for cause shown, permit a party in interest to intervene with respect to any specified matter. However, the section is not a restriction on the ordinary rules of intervention in equity. Seaboard Terminals Corp. v. Western Maryland Ry. Co., 4 Cir., 108 F.2d 911. The Second Circuit has refused to construe the provision any more narrowly than Rule 24, Rules of Civil Procedure. Commercial Cable Staffs' Ass'n v. Lehman, 2 Cir., 107 F.2d 917.

The Federal Rules of Civil Procedure do not supersede the express provisions of the Bankruptcy Act, but Rule 24 is applicable to proceedings under the Bankruptcy Act by virtue of General Order 37 in Bankruptcy, 11 U.S.C.A. following section 53, effective February 13, 1939,

Securities & Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293. There the Court said at page 458 of 310 U.S., at page 1054 of 60 S. Ct.: "Neither Chapter X nor Chapter XI, in terms, gives a right of 'intervention', but the Commission is authorized, with the permission of the court, to appear in any Chapter X proceedings, § 208. [The right] to intervene in a Chapter XI proceeding is, therefore, governed by the Rules of Civil Procedure, 28 U.S.C.A. following section 723C, and the general principles governing intervention."

In Vicksburg, S. & P. Ry. Co. v. Schaff, 5 Cir., 5 F.2d 610, the Court said, at page 611: "* * * it is a fundamental rule that a court of equity will exercise jurisdiction even when a plaintiff has another remedy, if that remedy is not as practicable and efficacious to the ends of justice and its proper administration as the remedy in equity. The intervention challenged the propriety of an order of the court disposing of property under its control. * * * When the intervention was filed, intervener's property was still in the custody of the receiver * * *, consequently, no other court had jurisdiction to consider a suit for its return. Minnesota Co. v. St. Paul Co., 2 Wall. 609, 17 L.Ed. 886."

In Natural Gas Pipeline Co. v. Federal Power Commission, 128 F.2d 481, this Court said, at pages 484–485: "Where a court has jurisdiction of a cause of action and the parties, it has jurisdiction also of supplemental proceedings which are a continuation of or incidental to and ancillary to the former suit even though the court as a federal tribunal might not have had jurisdiction of the parties involved in the ancillary proceeding if it were an original action. * * * Where in the progress of a suit in the United States Court, property has been drawn into custody and control, third persons claiming interest in or liens upon the property may be permitted to come into court to protect and enforce

their claims, even though the court could not have considered or adjudicated their claims if it had not originally impounded the property. Hoffman v. McClelland, 264 U.S. 552, 44 S.Ct. 407, 68 L.Ed. 845. There the court said at page 558 of 264 U.S., at page 409 of 44 S.Ct., 68 L.Ed. 845: 'Power to deal with such claims is incident to the jurisdiction acquired in the suit wherein the impounding occurs, and may be invoked by a petition to intervene *pro interesse suo* or by a dependent bill. But in either case the proceeding is purely ancillary' (citing cases). * * * This ancillary power to do complete justice as to all the parties' interests in a fund grows out of equity jurisdiction."

█ From these authorities, we conclude that even if formal intervention were necessary, which we do not concede, petitioner made out a meritorious case. The bankruptcy court, having sole and exclusive jurisdiction of a fund, sitting as a court of equity, had confronting it a petition of one who claimed that part of those funds, in equity, should be awarded to him. He was in the same position as he who seeks to intervene in order to reach a fund awarded to a mortgagee, as a secured creditor, on the ground that that mortgage fund belongs equitably to him, either as a surety who has paid the mortgage debt, or as one who, by force of law, has expended funds for the benefit or because of the default of the mortgagee. Whether we consider him as surety, as one subrogated to the right of the estate, or as one who in any capacity is entitled in equity to share in the fund before the court, he had a meritorious claim, upon which he had a right as a matter of law to be heard by intervention as well as by direct petition.

Our conclusion that Darrow was entitled to be heard is fortified by application of the doctrine of equitable subrogation. Thus his petition averred, *inter alia*, that the estates had asserted a claim against appellees for their wrongful use of the estate funds; that that claim has been compromised in an approved settlement order with Kulp and Johnson, who alone had received the benefit of their alleged misuse of the funds of the two estates; and that, therefore, Darrow, who has been surcharged because of their wrongful act, through no fault of his own, is entitled to be subrogated to all rights of the estate as a claimant against the fund in the custody of the court now earmarked for Kulp and Johnson. We think the petitioner has stated a good cause for equitable relief in this respect. This is of that type of cases to which the doctrine of subrogation is peculiarly applicable as an effective means for preventing injustice. Under Darrow's averments, Kulp and Johnson's alleged acts, which are said to have resulted in a handsome profit for them, were the sole cause of appellant's loss.

The nature and purpose of subrogation is defined in 50 Am.Jur. at pages 683–4 as follows: "Subrogation is a creature of equity, having for its purpose the working out of an equitable adjustment and the doing of complete and perfect justice between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it, and preventing the sweeping away of the fund from which in good conscience the creditor ought to be paid. It is the machinery by which the equities of one man are worked out through the legal rights of another; a legal fiction through which one person who pays the debt of another, not as a volunteer, is put into the shoes of the creditor, thereby becoming entitled to the latter's rights, priorities, remedies, liens and securities." Memphis & L. R. R. Co. v. Dow, 120 U.S. 287, 7 S.Ct. 482, 30 L.Ed. 595; New York Title & Mortgage Co. v. First Nat. Bank, 8 Cir., 51 F.2d 485, 77 A.L.R. 1052, certiorari denied 284 U.S. 676, 52 S.Ct. 131, 76 L.Ed. 572; Dunlap v. Pierce, 336 Ill. 178, 168 N.E. 277, 66 A. L.R. 181, and Wyoming Bldg. & Loan

Ass'n v. Mills Const. Co., 38 Wyo. 515, 269 P. 45, 60 A.L.R. 418, are illustrative of the many cases cited which support the definition.

██ If it be urged that we are confronted with a novel situation to which subrogation has, apparently, not been applied, the answer is that the doctrine was conceived as a process by which to accomplish equity and that there is no limit to the circumstances which may arise, to appeal to the conscience of the chancellor and require application of the doctrine in order that justice be done. Federal Land Bank v. Godwin, 107 Fla. 537, 136 So. 513, 145 So. 883; Wyoming Bldg. & Loan Ass'n v. Mills Const. Co., supra. "The doctrine * * * is not a fixed and inflexible rule * * *. It is not static, but is sufficiently elastic to take within its remedy cases of first instance which fairly fall within it. * * * Since the doctrine was first ingrafted on equity jurisprudence, it has been steadily expanding and growing in importance * * *, and is no longer, as formerly, limited to sureties and quasi sureties * * *. As now applied it is broad enough to include every instance in which one person, not acting as a volunteer * * *, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. * * * The doctrine * * * embraces all cases where, without it, complete justice cannot be done. * * Whenever a court of equity will relieve against a transaction, it will do so by subrogation if that is the most efficient and complete remedy which can be afforded." 59 Am.Jur. at pages 685–6, and cases cited.

Two lines of decision are closely analogous to the instant case. The first are those applying the doctrine to prevent unjust enrichment, which are exemplified by 3105 Grand Corp. v. City of New York, 288 N.Y. 178, 42 N.E.2d 475, 141 A.L.R. 1211, and First Taxing District v. Gregory, 97 Conn. 639, 118 A. 96, 26 A.L.R. 297. In the former, the re-

ceiver in foreclosure proceeding misappropriated funds from his receivership account in which the plaintiff had a beneficial interest and applied such funds to discharge a tax lien on certain other real property which was then in foreclosure and which subsequently was purchased at foreclosure by the defendant. The court held that the plaintiff was entitled to be subrogated to the tax lien of the City against the property in the hands of the defendant. In the Gregory case, Shelleck, treasurer of the corporate plaintiff, misappropriated its funds to make good his defalcation as administrator of a decedent's estate. The court held that the plaintiff might be subrogated to the rights of the creditors and distributees of the estate against the defendant who was surety on Shelleck's bond as administrator.

A second line of decision which may be more nearly analogous to the circumstances of the case at bar than those relying upon unjust enrichment, applies the doctrine to compel the actual wrongdoer to bear the burden of liability which has been imposed, by reason of his default, on another. Thus is Losito v. Kruse, 136 Ohio St. 183, 24 N.E.2d 705, 126 A.L.R. 1194, the court held that a master, required to respond in damages to a party injured by the wrongful act of his servant, was entitled to be subrogated to the claim of the injured party against the servant. See also Smith v. Foran, 43 Conn. 244. In City of Anderson v. Fleming, 160 Ind. 597, 67 N.E. 443, 66 L.R.A. 119, the court decided that the plaintiff could not recover against the City for personal injuries sustained when she fell into an excavation made in the public street by an independent contractor, it appearing that, in a prior suit against the contractor, plaintiff had been denied recovery. The theory of the decision was that any liability under the circumstances was primarily a liability of the contractor whose negligence allegedly had caused the injury; that the City, if required to pay a judgment growing out

of such allegedly negligent conduct, would be entitled to subrogation to the claim of the plaintiff against the contractor, and that, therefore, the prior judgment in favor of the contractor was a bar to plaintiff's claim against the City. In Inhabitants of Milford v. Holbrook, 9 Allen, Mass., 17, the City was subrogated to the rights of an injured third party against the defendant whose default in maintaining a dangerous structure over a public sidewalk occasioned the injury, it appearing that a judgment had been entered against the City for damages growing out of that default.

American Bonding Co. v. National Mechanics' Bank, 97 Md. 598, 55 A. 395, was a suit by the surety on the bond of one Vansant against the Bank to recover the sum paid by the plaintiff to the State of Maryland to cover Vansant's wrongful appropriation of state funds. On a showing that Vansant, clerk of the court of common pleas, had deposited moneys held in trust for the State in a special account with the defendant Bank; that interest paid by the bank on this account had, by arrangement with Vansant, been credited to his personal account and thereby diverted to his own use; that, in a suit by the State, judgment had been entered against plaintiff for the amount of such defalcation; that this judgment had been satisfied and that Vansant was judgment proof, the court held that plaintiff was entitled to be subrogated to all rights of the State, including that of immunity from a plea of the statute of limitations, not only against Vansant, but also, against the defendant who had participated in Vansant's breach of trust. Other authorities which discuss application of the doctrine are: American Surety Co. of New York v. Bethlehem Nat. Bank, 314 U.S. 314, 62 S.Ct. 226, 86 L.Ed. 241; Memphis & L. R. R. Co. v. Dow, supra; Dantzler Lumber & Export Co. v. Columbia Casualty Co., 115 Fla. 541, 156 So. 116, 95 A.L.R. 258; Wyoming Bldg. & Loan Ass'n v. Mills Const. Co., supra;

Probst v. Wigginton, 213 Ky. 610, 281 S. W. 834; Dixon v. Morgan, 154 Tenn. 389, 285 S.W. 558; Walker v. Walker, 138 Tenn. 679, 200 S.W. 825; Federal Land Bank v. Godwin, supra.

Although not a subrogation case, Leary v. United States, 224 U.S. 567, 32 S.Ct. 599, 56 L.Ed. 889, should be briefly mentioned for its bearing on this appeal, and its full implications as to petitioner's rights in equity, particularly on the intervention question. That decision was made on Leary's appeal from an order denying him the right to intervene in a suit by the United States against one Kellogg. Leary's decedent was surety on the bail bond of one Greene. Greene defaulted, and the United States recovered judgment against Leary on the bond. Thereafter, the United States filed a suit to charge Kellogg as a trustee with respect to certain stocks held by him for the use of Greene which were alleged to have been obtained by Greene through fraud perpetrated against the United States. Leary sought to assert a claim to this stock superior to that of the United States, setting out the aforementioned judgment against him on the bail bond for Greene and an oral agreement between Leary's decedent, Greene and Kellogg, that the stocks be held by the latter to indemnify the decedent for any judgment which might be entered against him as surety on the bond. The Court held that the petition was sufficient to constitute an equitable lien superior to the claim of the government, and that it was error to deny him the right to be heard.

The authorities cited, and others too many to consider, epitomize the power of a court of equity to do justice as between the parties, and exemplify the application of the doctrine of subrogation, characterized by the Court in Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412, as a pure unmixed equity, to achieve that end. Justice requires its application under the circumstances of the case at

bar. Appellant has been surcharged by the bankruptcy court and has paid into these two estates a sum in excess of $40,-000 because of the misuse by Kulp and Johnson, appellant's employees, of the funds of the estates which were in his hands as trustee. Although, according to the petition, the fault was theirs, and although they alone received the benefits of their wrong, appellant as trustee was the party accountable to the court. Not only has the claim of each estate against Kulp and Johnson been satisfied by that surcharge, but they have received an award by virtue of which they will be paid some $250,000 on claims asserted by them against the estate. Ultimately they should pay for their own default. In good conscience, appellant has a right to reach so much of that fund as in equity he ought to have. Especially is this true, since he stands before the court as an undischarged trustee of the estates whose accounting has not been completed. The power to grant this relief is within the scope of the court's general jurisdiction in equity to decide all questions such as this which are so intimately related to the bankruptcy proceedings as to be, in effect, a part thereof. Under the doctrine of the Leary case, supra, and, subject to his success in proving his averments, Darrow is entitled to invoke the remedy of subrogation as to so much of his claim as he is able to sustain in order to make him whole for the alleged wrongdoing of his employees.

■ Petitioner avers that he had a contract with Kulp and Johnson whereby they promised to hold him harmless as against any surcharges that might be asserted against him because of their actions "together with all legal expenses he might incur in defending such claims." Whether he had a right to intervene as a third person, relying upon such contract alone, is immaterial. At least, in asserting his claim, he had a right to prove such an agreement in support of his theory of recovery, namely, that he was entitled to recover from the money allotted them, such sums as he, as trus-

tee, had been forced to pay because of their default. As he had a right to have the court hear his claim in equity, he had a right, supplemental thereto, to rely upon an express contract of indemnity. Leary v. United States, 224 U.S. 567, 32 S.Ct. 599, 56 L.Ed. 889.

■ Respondents insist that the petitioner's right to relief was barred by a previous order of the court. It seems that Darrow filed objections to the approval of the plan and, in disposing of these objections, the court indicated that Darrow had no right to be heard. In our opinion, no basis for *res adjudicata* arises out of the facts presented. Darrow's claim could not have been put in issue by the objections. Furthermore if his objection included an attempt to assert a claim as a ground for objection to the plan, it was plainly not well founded. His objections to confirmation were wholly irrelevant. It mattered not what might become of the fund allotted to Kulp and Johnson, so far as the confirmation of the plan was concerned. And the court's confirmation of the plan could in no wise affect the merits of Darrow's claim to part of the fund allotted Kulp and Johnson, which Darrow later presented. In our opinion, no basis for application of the doctrine of *res adjudicata* exists.

■ Inasmuch as we have determined that Darrow had an absolute right to be heard, the order denying him relief was an appealable order. Brotherhood of Railroad Trainmen v. Baltimore & O. R. Co., 331 U.S. 519, at page 524, 67 S.Ct. 1387, 91 L.Ed. 1646. Hence, the motion to dismiss the appeal is denied.

In Number 11274, Darrow appeals from an order vacating a previous order allowing supersedeas bond and denying the supersedeas. Following the entry of the order on review in Number 11273, Darrow made a motion for a supersedeas. The judge then sitting entered an order giving him leave to file a supersedeas bond in the sum of two thousand dollars, and providing that, upon the filing of

the bond, the funds in the custody of the court remain in status quo until disposition of the appeal. The court approved his supersedeas bond on July 15, 1954. Thereafter, on July 23, on motion by attorneys for Kulp and Johnson, another judge vacated the order entered by the first judge and declared that the supersedeas bond be held for naught. Thereupon, Darrow appealed from this order.

We are not concerned with what induced Judge Campbell to enter an order vacating that of Judge Perry or whether there was justification for such unusual action. We are concerned only with the correctness of the final ruling and, upon careful consideration, are of the opinion that the court erred in entering it. From what we have said, it is clear that Darrow was entitled to his day in court for the determination of whether or not he was entitled in equity to receive part of the funds then held in court but ordered paid to Kulp and Johnson. When he asked that, pending the appeal, the status quo be maintained, he was asking only what a court of equity should do. It was apparent from his petition that at least one of the two of Kulp and Johnson was insolvent and that any other proceeding against such person would be a futile gesture. Furthermore, as we have said, Darrow should not be relegated to other expense and delaying litigation in order to protect his rights which have arisen in this very proceeding. Consequently, it was highly desirable and essential in order to protect Darrow's rights that the fund be held intact until his appeal could be determined. We think in this situation it was error to refuse the supersedeas and thus to endanger the efficacy of the remedy sought to be preserved by Darrow.

The order from which the appeal was taken in No. 11273 is reversed and remanded for further disposition in accord with the views we have expressed. The order from which the appeal was taken in 11274 is reversed and remanded with directions to grant a stay.